BAP No. 22-1215

# UNITED STATES BANKRUPTCY APPELLATE PANEL FOR THE NINTH CIRCUIT

---

**In Re Robert Brower, Sr.**

Bankr. Case No. 5:15-bk-50801- MEH
Adv. Case No. 5:21-ap-05029

---

MICHAEL G. KASOLAS, LIQUIDATING TRUSTEE FOR THE ROBERT BROWER, SR. LIQUIDATING TRUST,

Appellant,

v.

AURORA CAPITAL ADVISORS, et. al.,

Appellees.

_____

Appeal from Partial Final Judgment Entered by the United States Bankruptcy Court for the Northern District of California

**BRIEF OF APPELLEE**

JOHNSON, ROVELLA, RETTERER, ROSENTHAL & GILES, LLP,
dba JRG ATTORNEYS AT LAW

Heinz Binder (SBN 87908)
Wendy Watrous Smith (SBN 133887)
BINDER & MALTER, LLP
2775 Park Avenue
Santa Clara, CA 95050
T: (408) 295-1700
F: (408) 295-1531
Email: heinz@bindermalter.com
Email: wendy@bindermalter.com

## DISCLOSURE STATEMENT

JOHNSON, ROVELLA, RETTERER, ROSENTHAL & GILES, LLP, dba JRG ATTORNEYS AT LAW, appellee in this action, "JRG" makes this statement pursuant to Bankruptcy Rule 8012.

JRG has no parent corporation, and no publicly held corporation owns more than 10% of interests in JRG.

Date:        January 5, 2023

BINDER & MALTER, LLP


*/s/ Wendy Watrous Smith*
Wendy Watrous Smith
*Attorneys for Appellee*
Johnson, Rovella, Retterer, Rosenthal &
Giles, LLP, dba JRG Attorneys at Law

1

# TABLE OF CONTENTS

Page

DISCLOSURE STATEMENT ........................................................................ 1
I. INTRODUCTION ................................................................................. 2
II. RESTATEMENT OF ISSUES ON APPEAL ........................................... 4
III. STATEMENT OF THE CASE ............................................................... 5
    A. As the largest creditor, the Bank drove the bankruptcy proceeding .... 5
    B. The Bank and the Bankruptcy Court recognized Coastal as a distinct
       corporate entity throughout the case .................................................... 6
    C. Procedural history ................................................................................ 8
IV. SUMMARY OF ARGUMENT .............................................................. 12
V. ARGUMENT ..................................................................................... 16
    A. Applicable standard for a motion to dismiss ..................................... 16
    B. None of the Trustee's theories transform Coastal's shareholders'
       conditional interest in a distribution to immediate ownership ........... 17
       1. Coastal's Amended Articles of Incorporation did not convert
          corporate assets into assets of its shareholders without
          distribution .................................................................................... 18
       2. Brower's position as a sole shareholder of Coastal did not
          convert Coastal's assets into assets of the Bankruptcy Estate ...... 21
       3. A claim of *alter ego* did not convert Coastal's assets to assets of
          the Bankruptcy Estate .................................................................... 26
       4. Coastal's sale of the Wine Estate property without Court
          approval did not transform Coastal's assets into assets of the
          Bankruptcy Estate .......................................................................... 28
       5. The Bank, acting on behalf of the Bankruptcy Estate, had
          remedies in Bankruptcy to protect the Coastal Funds pending
          resolution of share ownership and payment of Coastal's
          creditors ........................................................................................ 30
    C. Any error by the Bankruptcy Court regarding the ownership of the
       Cypress Funds would have been harmless ......................................... 31
       1. The claims are largely time barred ................................................ 32
       2. As a matter of law, no action can be stated on the alleged facts
          for conversion, turnover, or disgorgement .................................... 34

VI.    CONCLUSION ......................................................................... 36

VII.   CERTIFICATION AS TO INTERESTED PARTIES ............................ 38

VIII.  CERTIFICATION OF COMPLIANCE .................................................. 39

IX.    CERTIFICATE OF SERVICE WHEN NOT ALL CASE
       PARTICIPANTS ARE CM/ECF PARTICIPANTS .............................. 40

# TABLE OF AUTHORITIES

Page

## Cases

*Abele v. Modern Fin. Plans Servs., Inc. (In re Cohen)*, 300 F.3d 1097
  (9th Cir. 2002) ................................................................................................ 21

*AMCAL Multi-Housing., Inc. v. Pac. Clay Prod.*, 457 F. Supp.2d 1016
  (C.D. Cal. 2006) ............................................................................................. 17

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................ 16

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ......................................... 16

*Bennett v. Hollingsworth (In re Hollingsworth)*, 224 B.R. 822 (Bankr.
  M.D. Fla. 1998) .............................................................................................. 22

*Beverly Oaks Physicians Surgical Ctr., Ltd. Liab. Co. v. Blue Cross &
  Blue Shield of Ill*., 983 F.3d 435 (9th Cir. 2020) ........................................... 17

*Bloomberg v. Riley*, 351 B.R. 662 (Bankr. E.D. Wis. 2006) ................................ 28

*Communist Party v. 522 Valencia, Inc*., 35 Cal.App.4th 980 (1995) .................... 27

*Curci Investment, LLC v. Baldwin*, 14 Cal.App.5th 214 (2017) ........................... 25

*Deocampo v. Potts*, 836 F.3d 1134 (9th Cir. 2016) .............................................. 33

*DZ Bank AG Deutsche Zentral-Genossenschaftsbank v. Meyer,* 869 F.3d
  839 (9th Cir. 2017) ......................................................................................... 24

*Farrington v. A. Teichert & Son, Inc*. 59 Cal.App.2d 468(1943) .......................... 35

*In MTLC Inv., Ltd. v. Jones (In re Hill)*, 2004 US DIST. Lexus 31985
  (M.D. Fl 2004) ............................................................................................... 23

*In re Am. Int's Refinery*, 402 B.R. 728 (Bankr. W.D. La. 2008) .......................... 28

*In re Baker*, 68 B.R. 360 (Bankr. D. Or. 1986) ................................................... 23

*In re Bellardita*, 2008 WL 4296554, Bankr. E.D.Cal. (Sept. 19, 2008) ............... 27

*In re Ground Round*, 2007 Bankr. LEXIS 503 (Bankr. D. Mass.) (2007) ........... 33

*In re JMC Telecom LLC,* 416 B.R. 738 (C.D. Cal. 2009) ................................... 35

*In re Mallinckrodt PLC*, 2022 Bankr. LEXIS 273 (Bankr. Del. 2022) ................ 33

*In re Mckenzie Energy Corp.*, 228 B.R. 854 (Bankr. S.D. TX 1998) ................... 27

*In re Pisculli*, 2009 WL 700059 (Bankr. E.D.N.Y. 2009) .................................... 23

*In re Walhof Props.,* LLC, 613 B.R. 479 (Bankr. M.D. Fla. 2020) ...................... 22

*In re Williams*, 104 B.R. 296 (Bankr. C.D. Cal. 1989) ........................................ 30

*Kismet Acquisition, LLC v. Icenhower (In re Icenhower)*, 757 F.3d 1044 (9th Cir. 2014)..................................................................................... 28

*Levin v. Maya Contr. (In re Maya Constr. Co)*, 78 F.3d 1395 (9th Cir 1996) ........................................................................................................ 34

*Mesler v. Bragg Mgmt Co.*, 39 Cal.3d 290 (1985) ........................................ 14, 26

*Miller v. McColgan*, 17 Cal.2d 432 (1941)........................................................ 18, 21

*MTLC Inv., Ltd. v. Jones (In re Hill)*, 265 B.R. 296 (Bankr. M.D. Fla 2001) ........................................................................................................ 23

*Nelson v. Anderson*, 72 Cal.App.4th 111 (Cal. Ct. App.2d Dist. 1999)................ 21

*New York v. New York, New Haven & Hartford R.R. Co,* 344 U.S. 293 (1953).......................................................................................................... 34

*PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP* (2007) 150 Cal.App.4th 384 ................................................................... 35

*Strom v. United States*, 641 F.3d 1051 (9th Cir. 2011) ........................................ 16

*Suhl v. Bumb,* 438 F.2d 869 (9th Cir. 1965) ........................................................ 27

*West Valley Med. Partners, LLC v. Shapow (In Re Shapow)*, 559 B.R. 51 (2019)........................................................................................................... 25

## Statutes

11 U.S.C. § 108(a) ............................................................................................. 33

11 U.S.C. § 330................................................................................................... 23, 36

11 U.S.C. § 541................................................................................................... 20

11 U.S.C. § 542................................................................................................... 35

11 U.S.C. § 549................................................................................................... 17, 32

11 U.S.C. § 727................................................................................................... 22

11 U.S.C. § 1129................................................................................................. 33

11 U.S.C. § 3016................................................................................................. 33

Cal. Civ. Proc. § 338 .......................................................................................... 32

Cal. Corp. Code § 1001....................................................................................... 15, 29

Cal. Corp. Code § 2004....................................................................................... 12, 13, 18, 20

## Rules

Fed. R. Civ. P. 12(b)(6)...................................................................................... 16, 17

Fed. R. Bankr. P. 2002(c)(3) and 3016 ............................................................. 33

## I. INTRODUCTION

This is the remains of a long effort by MFUG Union Bank, N.A. (the "Bank") to collect a debt from the now-deceased debtor, Robert Brower, Sr. ("Brower"). The conflict has worked its way through adversary proceedings, state court actions, repeated appeals, and a confirmed Chapter 11 plan.[1] Brower filed the Chapter 11 case in 2015. As is clear from the docket in the case,[2] the Bank, who holds 90% of the unsecured debt in the case,[3] largely drove the proceedings, ultimately confirming a plan of reorganization November of 2017 (the "Plan").[4] The Plan provided for a delayed effective date and became effective in September 2020.[5] At that point, the liquidation trustee, who was appointed through the Plan and is the plaintiff in this adversary proceeding (the "Trustee"), took full control.

Central to this story is the disposition of Coastal Cypress Corporation ("Coastal") during the bankruptcy. Soon after filing, in April 2015, Coastal sold its primary assets, called the "Wine Estate Property," for approximately $12 million, of which the Bank received a substantial portion to pay an obligation from Coastal Cypress.[6] The remaining funds are referred to here as "Coastal Funds." (See

---

[1] EOR 30 830-833
[2] EOR 47 1203-1243 (the docket for the Bankruptcy case)
[3] EOR 6 115
[4] EOR 6 102-153; EOR 6 154-155
[5] EOR 10 186-7
[6] EOR 6 109-110; EOR 30 835

discussion at III. A.).  Coastal purchased new property in November 2016.[7]

When Brower filed his petition, he asserted that he owned 24% of the shares in Coastal.  The Bank pursued what it called the "Estate Enhancement Action" on behalf of the bankruptcy estate (the "Bankruptcy Estate") in order to eliminate other shareholders in Coastal and unwind the change of the state of incorporation from California to Delaware.[8]  This resulted in a judgment that the Bankruptcy Estate was the 100% owner of the Coastal shares.[9] The question of the value and ownership of the Coastal shares was regularly revisited during the bankruptcy.

Notwithstanding the Bank's diligent efforts to bring all of the Coastal shares into the Bankruptcy Estate, Coastal and the Coastal Funds remained in Brower's control until the Plan's effective date in 2020 (See discussion at V.B.5.).  Coastal continued to incur debt, and to pay taxes and other creditors, including paying its attorney JRG Attorneys at Law ("JRG").[10] As alleged by the Trustee, much of Coastal' s money was also misused by Brower.

The Trustee's present lawsuit seeks to re-write history, asking the court to ignore Coastal's separate existence after years of litigation over the corporation's share ownership and state of incorporation in the Enhancement Action. Only by

---

[7]  EOR 30 840 (¶ 100)
[8]  EOR 6 106; EOR 30 832
[9]  EOR 9 177-185
[10]  EOR 20 507 (l. 22); EOR 20 508 (l. 11); EOR 30 840 (¶¶ 99-100)

having the court find that Coastal's property was really property of the Bankruptcy Estate can the Trustee support his claim that Coastal's payments were unauthorized payments of the Bankruptcy Estate's money.

The Bankruptcy Court, after giving the Trustee three tries at presenting a complaint, correctly concluded that the Trustee cannot support his claim.[11] This is particularly true here as Coastal continued to incur debt and own property as a corporate entity. As discussed below, each of the arguments presented by the Trustee on appeal is directly contrary to California law or is unsupported by controlling authority. Nor can a claim of equity save the Trustee's complaint in light of the history of the case. JRG asks the Bankruptcy Appellate Panel to sustain the Bankruptcy Court's rulings.

## II.    RESTATEMENT OF ISSUES ON APPEAL

Each of the four issues stated by Appellant as issues on appeal require re-restatement:

Issue No. 1:  Did the Bankruptcy Court correctly grant the motions to dismiss the Second Amended Complaint (the "SAC"), without giving the Trustee leave to amend the complaint a third time?

Issue No. 2:  Did the Bankruptcy Court correctly decide that the Coastal

---

[11]   The Bankruptcy Court's decisions were: November 15, 2021 (the "November Decision") EOR 20 501-518; March 8, 2022 (the "March Decision") EOR 29 800-815; and August 1, 2022 (the "August Decision") EOR 38 1138-1148.

Funds, which resulted from the sale of property owned by Coastal, a non-debtor corporation, were not transformed into property of its shareholder—the Brower Bankruptcy Estate –where the corporation continued to incur debt and to be recognized in the bankruptcy proceedings?

Issue No. 3: Did the Bankruptcy Court correctly decide that, even if Coastal was considered to be the *alter ego* of Brower, that did not support a claim that the Coastal Funds became property of Brower's Bankruptcy Estate where Coastal was not substantively consolidated into the bankruptcy.

Issue No. 4: Even if the Bankruptcy Court is found to have erred in its ruling that the Coastal Funds were not property of Brower's Bankruptcy Estate, was the error harmless as the Trustee's claims for relief in the SAC are barred generally by time, or, as to the claims for conversion, turnover, or disgorgement, by the unavailability of the relief requested?

## III. STATEMENT OF THE CASE

### A. As the largest creditor, the Bank drove the bankruptcy proceeding.

Brower filed the Chapter 11 case in March of 2015. In April 2015, Coastal sold the Wine Estate Property, which was its primary asset, for approximately $12 million.[12] The Bank received a portion of those proceeds to pay a debt owed by

---

[12] EOR 30 835

Coastal,[13] leaving approximately $7 million (called "Net Proceeds" in the Appeal Brief) .[14] Because the SAC is unclear just what is meant to be covered by the "net" amount of the "Net Proceeds," the money that is in dispute in this action is described here generally as the "Coastal Funds."[15]

The Bank held 90% of the claims, and, as reflected in the Bankruptcy Docket, contested virtually every action.[16] The Bank also prosecuted the Enhancement Action, naming Coastal and other defendants.[17] In 2017, the Bank confirmed the Chapter 11 Plan, which included an extended time before becoming effective.[18] It was structured to allow the Bank to prosecute the Enhancement Action on behalf of the Brower Bankruptcy Estate to increase the estate by eliminating the other shareholders from Coastal. Until the Bank decided to trigger the effective date for the Plan, the Bank was largely in control of the proceedings.[19]

**B.      The Bank and the Bankruptcy Court recognized Coastal as a distinct corporate entity throughout the case.**

In November 2015, Brower moved to sell the Bankruptcy Estate's shares in

---

[13]   EOR 6 110
[14]   EOR 30 836, ll. 23-25
[15]   The SAC describes the amounts that it asserts make up the Net Proceeds (EOR-30 836-837, ¶¶ 85-86), but then states that further creditors were paid, (¶ 87), including a substantial tax bill, (EOR 840, ¶ 99).
[16]   EOR 1203-1243
[17]   EOR 48 1244-1272
[18]   EOR 10 186-187
[19]   *See e.g.,* Rulings in Enhancement Action: EOR 8 160-175; EOR 9 177-184.

Coastal, which Brower claimed to be 24% of the company, back to Coastal.[20] Brower, as debtor-in-possession, also filed reports under Bankruptcy Rule 2015.3 describing meetings of the board of directors of the company and plans for further investment. As noted by the Appellant Brief, these continued at least for the following year, though no re-investment was reported.[21]

The Bankruptcy Court also expressly acknowledged that the Coastal Funds were not property of Brower's Bankruptcy Estate but would come to the Bankruptcy Estate "either through a distribution from the corporation or sale of shares. . ."[22] The Bank did not object to Coastal's separate corporate existence, for example by claiming *alter ego* or by moving to substantively consolidate Coastal into the Bankruptcy Estate.[23] Instead, it spent several years litigating the Enhancement Action to determine Coastal's corporate structure, including to challenge the merger of the company from a California corporation to a Delaware corporation, and the allocation of shares to different shareholders.[24]

Finally, in November of 2016, Coastal purchased another property in Delaware, which was held in Coastal's name.[25] In the Bankruptcy Court's

---

[20]  EOR 3 42-54
[21]  Appellant's Opening Brief, pp. 8-10
[22]  EOR 3 53
[23]  *See* Bankruptcy Docket EOR 47 1203-1247 showing no such motion.
[24]  EOR 30 830, ¶60; EOR 30 83, ¶64
[25]  EOR 30 840

November Decision, which granted the motions to dismiss the Trustee's original complaint in this adversary proceeding (the "Original Complaint"), it acknowledged that Coastal's ownership of the Delaware property resulted in additional corporate debts.[26] The Court stated:

> [I]n its opposition to the motion to dismiss, . . . the liquidating trustee asserts that he took control of other real property owned by Coastal and sold it for the benefit of debtor's creditor's creditors.
>
> . . . .
>
> The trustee obtained Court approval to employ real estate brokers in February of 2021. Therefore, Coastal could not have liquidated all of its assets and paid all its debts prior to the sale of the Delaware property.[27]

The Bankruptcy Court found in each of its decisions that nothing transforms a shareholder's right to claim a distribution into an actual ownership of corporate assets.[28] Even under the Trustee's theories, once Coastal acquired new property and new debt, the shareholder could no longer make a claim against the Coastal Funds without paying the company's new obligations.

### C. Procedural history.

In 2021, six years after the bankruptcy case was filed and four years after the

---

[26] EOR 20 501-518
[27] EOR 20 507, l. 20; EOR 20 508, l. 11
[28] November Decision, EOR 20 508-509; March Decision, EOR 29 811; August Decision, EOR 38 1142

Bank confirmed its Plan, the Liquidating Trust brought the adversary proceeding asserting that the Coastal Funds have always been property of the Bankruptcy Estate and that the Trustee can now—years later—avoid Coastal's payments to its attorney JRG.

The Trustee's Original Complaint simply alleged that because Coastal had sold its major asset and paid creditors, the Bankruptcy Estate, as the sole shareholder of Coastal, directly owned the Coastal Funds.[29] Faced with motions to dismiss the Original Complaint, the Trustee admitted that the Bankruptcy Estate owned shares in Coastal not its assets, but suggested theories that might support its claim. In November 2021, the Bankruptcy Court dismissed the complaint, but allowed the Trustee to amend.

In the First Amended Complaint (the "FAC") the Trustee proposed three theories for the Bankruptcy Estate's direct ownership of the Coastal Funds alleging that: 1) the Coastal Funds were proceeds of estate property under Bankruptcy Code Sections 541(a)(6) and (a)(7);[30] 2) the Bankruptcy Estate held a right to the Coastal Funds because Brower and Coastal were *alter egos*; and 3) the Bankruptcy Estate held a direct interest in the Coastal Funds as a sole shareholder.[31]

---

[29] November Decisions, EOR 20-508
[30] All statutory references not specifically identified refer to the United States Bankruptcy Code.
[31] March Decision, EOR 29 803-814

In the Trustee's opposition to the motions to dismiss the FAC, he raised a new theory, now asserting that Brower exceeded his corporate authority as an officer of Coastal in dispersing the Coastal Funds without the Bankruptcy Court's permission, and that this converted the funds into estate property without the funds being dispersed.[32] In the March Decision, the Court dismissed the FAC, but allowed the Trustee a second opportunity to amend the complaint to set forth facts to support his new theory.[33]

In the Trustee's Second Amended Complaint (the "SAC") he repeated two of the arguments to claim ownership of the Coastal Funds, and added a third, equally flawed, theory.[34] Contrary to the Court's March Decision, the Trustee again asserted that that the Coastal Funds were assets of the Bankruptcy Estate pursuant to Sections 541 (a)(6) and (a)(7), claiming that only the Bankruptcy Estate could consent to the use of Coastal's "lone asset" -- the Coastal Funds.[35]

---

[32] EOR 29 810

[33] EOR 29 811 The March Decision also dismissed the claims the in the FAC seeking to avoid the transfers under Cal. Civ. Code § 3439.04(a)(1) for "actual fraud" and Cal. Civ. Code § 3430.04(a)(4) for "constructive fraud". The FAC asserted standing both as a creditor of Coastal (based on a debt from Coastal to Brower), and as shareholder of Coastal. The Court noted that Brower had been fully repaid by Coastal, so there was no claim as a creditor, and that a claim could not be made by a shareholder on a derivative basis. (EOC 29-814.) The Trustee has not restated these claims in the SAC and does not address them in the Appeal.

[34] August Decision EOR 38 1142

[35] EOR 30 819

He also continued to argue that the Bankruptcy Estate's alleged right to receive a shareholder distribution of the Coastal Funds, by itself, converted the funds into estate property. *Id.* The Court had already rejected both arguments.[36]

The Trustee's newest argument claimed that certain terms in Coastal's "Amended and Restated Articles of Incorporation" gave shareholders a right to demand distribution upon the sale of assets (a "Liquidation Event"), and that such a right caused a direct ownership interest in the Coastal Funds without any further action by either the corporation or the shareholders.[37] But the additional document does not transfer ownership. As the Bankruptcy Court stated in the August Decision:

> While the Amended Articles may create grounds for shareholders to sue a corporation for failure to make a disbursement. . .there is no legal support for the theory that it created a property right, which then transformed non-estate property into property of the estate.[38]

As discussed below, the Appeal Brief does not identify any legal support for such transformation.

The SAC also asserted a right to rescind the various transfers from Coastal to JRG based on California Corporation Code § 1001. The Bankruptcy Court in the August Decision recognized that this statute does not operate to

---

[36] EOR 29 805, 807-809
[37] EOR 30 819
[38] EOR 38 1144, ll. 4-5

transfer ownership of corporate property.[39] Nor does it require shareholder approval for all actions after such a transaction takes place. Cal. Corp. Code § 1001.

In its August Order, the Bankruptcy Court granted all three motions to dismiss the SAC with prejudice.[40]  The Trustee obtained a partial judgment as to the moving parties and filed this appeal.

## IV.    SUMMARY OF THE ARGUMENT

The Trustee's appeal focuses entirely on his claim that the Coastal Funds were actually property of the Bankruptcy Estate at all times when Coastal made the payments that the Trustee now seeks. The Appeal Brief states four arguments for its position. Each argument either ignores California statutes and controlling cases entirely or relies on non-controlling case law.

First, the Trustee reads Coastal's Amended Articles of Incorporation as automatically transferring actual ownership of proceeds from the corporation's sale of most of its assets to the shareholders. The Articles themselves do not provide for such change of ownership without payment. And nothing in California law supports such an interpretation. In fact, it is directly contrary to California Corporations Code Section 2004, which prohibits any corporate distribution to

---

[39]  EOR 38 1145
[40]  EOR 38 1148

shareholders or liquidation of a corporation unless accommodation has been made for all of the corporation creditors. Cal. Corp. Code. § 2004. The Appeal Brief confuses the "Liquidation Event" of the Amended Articles of Incorporation with liquidation of a corporation generally, as governed by the California Corporations Code. The occurrence of an event defined by the corporate articles cannot override the California Corporation Code's requirements.

The Appeal Brief also confuses the impact of a bankruptcy of a shareholder on a non-bankrupt owned corporation. It argues that, once the primary assets of the owned corporation were sold, the corporation was limited to incurring debt for "ordinary course" expenses.[41] The California Corporation Code has no such restrictions on the creditors who must be paid by a corporation before it makes a distribution. Cal. Corp. Code § 2004. Here, the Trustee in the SAC admits that Coastal acquired real property in 2016, thus incurring the related obligations.[42] The Bankruptcy Court concluded that there was no legal foundation for the Trustee's claim that the creditors right to a distribution was the same as actual ownership and could override Coastal's Creditors.[43] The appeal brief provides no such foundation.

Second, the Trustee argues that the Coastal corporate form can be ignored in

---

[41] Appeal Brief, p. 21
[42] EOR 30 840
[43] EOR 38 144, ll. 3-6

bankruptcy if the debtor is a 100% shareholder. Again, the Trustee points to no controlling law to support his position that, contrary to California Corporations Code, a bankruptcy estate as shareholder can take possession of the non-debtor corporate assets without making full accommodation for that corporation's creditors. As observed by the Bankruptcy Court in its November Ruling, the Trustee's suggestion that the Coastal Funds were free from Coastal's debt[44] is contradicted by the Trustee's admission that Coastal continued to incur obligations in connection with its purchase of new property.[45]

Third, the Trustee relies on a general equitable claim that Coastal is the *alter ego* of Brower and that the corporate assets were at all times assets of the property of the Bankruptcy Estate.[46] In its March Decision, however, the Bankruptcy Court points out that, in California, a claim of *alter ego* only creates a claim of liability against the second party, and does not eliminate its separate existence, citing *Mesler v. Bragg Mgmt Co.*, 39 Cal.3d 290, 300 (1985). Specifically, it does not bring the assets of the non-debtor *alter ego* into the bankruptcy estate.[47] The cases relied on in the Appeal Brief do not apply California law on this issue, and the Trustee does not address the controlling

---

[44] EOR 30 837, ¶87
[45] EOR 20 507, ll. 1-10
[46] Appeal Brief p. 36
[47] EOC 29 805

California cases cited by the Bankruptcy Court. In any case, the Trustee cannot make a general claim in equity asking the court to ignore the corporate existence of Coastal, when Coastal's corporate form and ownership have been the focus for extensive proceedings in the bankruptcy case.

Fourth, the Trustee claims that Brower acted beyond his corporate authority under California Corporation Code Section 1001 by having Coastal sell the Wine Estate Property without Bankruptcy Court approval. While that may be true, the fact does not convert Coastal assets into assets of the Bankruptcy Estate, nor did it make all future decisions of the corporation's board subject to Bankruptcy Court approval. Corporation Code Section 1001 requires a shareholder vote to approve the sale of substantially all of the corporate assets; it does not strip a board of all authority. Nor does it require–as argued by the Trustee–that the shareholders approve every transaction made outside a corporation's ordinary course of business. The Trustee identifies no law that would convert Coastal's assets into assets of the Bankruptcy Estate because of a failure to obtain approval of the Wine Estate sale or subsequent actions of the corporate board of directors.

Finally, in the unlikely event that the Bankruptcy Appellate Panel finds that the Bankruptcy Court erred, any such error was harmless to the extent that the claims are time barred. The SAC seeks to recover 40 payments from Coastal to JRG made over five years, most of which are beyond the applicable statute of

limitations. The Trustee has claimed that the Plan operated to toll the statutes, but there is no such tolling provision or injunction in the Plan. As a matter of law, an injunction cannot be inferred or imposed as a provision of a plan where there is no notice to the party affected.  The SAC also cannot state an action for conversion, turnover or disgorgement as the complaint seeks only money damages, not the recovery of specific funds.

## V.      ARGUMENT

### A.    Applicable standard for a motion to dismiss

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. *Strom v. United States*, 641 F.3d 1051, 1067 (9th Cir. 2011).  To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

For the purposes of a motion to dismiss, "a legal conclusion couched as a factual allegation" need not be accepted as true. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The obligation to provide the grounds for the claimed entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*  The allegations

must "raise a right to relief above the speculative level." *Id.* When considering a motion to dismiss under Rule 12(b)(6), the court may also consider matters of which it may take judicial notice. *Beverly Oaks Physicians Surgical Ctr., Ltd. Liab. Co. v. Blue Cross & Blue Shield of Ill.*, 983 F.3d 435, 439 (9th Cir. 2020). Further, "[i]f a legal impediment such as an affirmative defense or some other bar to recovery is apparent from the face of the complaint, then a motion to dismiss for failure to state a claim is mandated." *AMCAL Multi-Housing., Inc. v. Pac. Clay Prod.*, 457 F. Supp.2d 1016, 1021 (C.D. Cal. 2006).

### B.   None of the Trustee's theories transform Coastal's shareholders' conditional interest in a distribution to immediate ownership.

The central issue in this appeal is timing. In order for the Trustee to recover Coastal's payment to JRG as transfers of Bankruptcy Estate assets under Section 549, or otherwise, the money must have been owned by Coastal *when it was paid*. *See e.g.*, 11 USC § 549. A potential right to shareholder distribution is not enough.[48] When Coastal failed to pay the shareholders, they had a right to sue the company for payment, not instant ownership.[49] None of the Trustee's theories convert the condition right to shareholder distribution to actual ownership.

---

[48]   EOR 38 1144
[49]   EOR 38 1144

1. Coastal's Amended Articles of Incorporation did not convert corporate assets into assets of its shareholders without distribution.

As explained by the Bankruptcy Court in the August decision, a shareholder has only an expectancy to a distribution not ownership.[50] The Court explains the basic fact that a corporation is a separate entity. Coastal's separate corporate existence is particularly evident here in light of the extensive litigation between the Bank and Coastal's shareholders regarding who owned the shares and the state of the company's incorporation.[51] The Court observed that, in order for a corporation to distribute assets, either as a dividend or a liquidation, California law requires that the corporation provide for all creditors.[52] The Court cites *Miller v. McColgan*, 17 Cal.2d 432, 436 (1941), which states that a shareholder simply has an expectancy in the property and becomes owner when the corporation liquidates or, by action of directors declares a dividend. *Id.* The California Corporations Code states quite clearly that the liquidation of a corporation requires that the board of directors must first "determin[e] that all the known debts and liabilities of a corporation in the process of winding up have been paid or adequately provided for" before distributing the remaining assets to shareholders. Cal. Corp. Code. § 2004. If the liquidation is by court proceeding, the court must wait until the

---

[50] EOR 38 1143
[51] EOR 30 830-831
[52] EOR 38 1142

expiration of time for creditors to present claims before paying shareholders. *Id.*

The Trustee's theory that the Bankruptcy Estate, as a shareholder, owned the Coastal Funds even though the funds were not distributed depends on the Trustee's reading of Coastal's Amended Articles of Incorporation. This requires that, when substantially all of the company's assets are sold, there is a "Liquidation Event" which entitles the shareholders to immediate distribution. The August Decision observes, however, that in order to distribute assets to shareholders, a corporation must first comply with the Corporations Code and accommodate for all known debts.[53] Because the Liquidation Event of the Amended Articles of Incorporation does not address the payment of outstanding debt of the corporation, it is the not the same as the liquidation itself and does not transfer ownership of the assets.

Furthermore, the Trustee declines to acknowledge the effect of Coastal's continuing to incur debt. That included buying property that was not sold until 2021.[54] The SAC attempts to avoid the problem by alleging that Brower used Coastal's money to buy the property for himself.[55] That may be true, but the property was taken in Coastal's name, and it was Coastal that incurred the debt.[56]

If there was a window of time when Coastal could have distributed the

---

[53]  EOR 38 1144
[54]  EOR 20 508; EOR 30 840
[55]  EOR 30 840
[56]  EOR 20 508; EOR 30 840

Coastal Funds without violating California law, the simple fact is that Coastal didn't do it. At most, Coastal's failure to comply with the Amended Articles of Incorporation gave its shareholders the right to sue the company; it did not transfer ownership of the assets to the Bankruptcy Estate.[57]

The Appeal Brief also makes a great deal about Brower's abuse of the Coastal Funds to support a "lavish lifestyle".[58] But the question is whether Coastal continued to have any debt that the corporation had to pay, not whether it was from an operating business. Cal. Corp. Code § 2004. Indeed, as soon as Coastal acquired the Delaware Property in 2016, it would have been obligated at a minimum to pay property taxes. The Trustee's assertion in the Appeal Brief that the $7 Million in Coastal Funds existed "after provision for all legitimate creditors" does not include Coastal's ongoing obligations.[59] Brower's excesses did not convert the Coastal Fund into funds of the Bankruptcy Estate, but simply created a right of action for Coastal to sue Brower.

None of the cases cited in the Appeal Brief stand for a proposition that a California corporation can pay its shareholders without providing for the corporation's creditors—whether or not the debt arises from the company's ordinary course of business. Bankruptcy Code Section 541(a)(6) and (a)(7) also do

---

[57] EOR 38 1144
[58] Appeal Brief, p. 23
[59] Appeal Brief, p. 21

not change the California requirement that a corporation must pay its creditors before distributing assets to shareholders.  At most the Bankruptcy Estate may claim a distribution from Coastal, not an immediate ownership in its assets.

2.  <u>Brower's position as a sole shareholder of Coastal did not convert Coastal's assets into assets of the Bankruptcy Estate.</u>

It is well established that "state law…determines the nature and extent of a debtor's interest in property." *Abele v. Modern Fin. Plans Servs., Inc. (In re Cohen)*, 300 F.3d 1097, 1104 (9th Cir. 2002).  In California, "shareholders own neither the property nor the earnings of the corporation.  Shareholders own only stock, from which their income is derived upon the liquidation of assets or the declaration of dividends by the directors." *Nelson v. Anderson*, 72 Cal.App.4th 111, 126 (Cal. Ct. App.2d Dist. 1999) *internal citations omitted*. As stated by the California Supreme Court in *Miller v. McColgan*:

> <u>It is fundamental, of course, that the corporation has a personality distinct from that of its shareholders, and that the latter neither own the corporate property nor the corporate earnings. The shareholder simply has an expectancy in each,</u> and he becomes the owner of a portion of each only when the corporation is liquidated by action of the directors or when a portion of the corporation's earnings is segregated and set aside for dividend payments on action of the directors in declaring a dividend.

*Miller v. McColgan*, *Supra.* 17 Cal.2d 436, questioned on other grounds; *emphasis added*.

The SAC alleges that when Coastal sold the Wine Estate Property, the sale

was a Liquidation Event, and the Coastal Funds were therefore owned by the shareholder.[60]  The SAC does not allege that Coastal issued a dividend or that the company resolved to dissolve or wind up its affairs – three events that could result in payment to shareholders.  As discussed above, the occurrence of a Liquidation Event did not, by itself, effect a legal liquidation or convert the corporation's assets into assets owned by the shareholder without a distribution.

The cases cited in the Appeal Brief do not change the outcome of the analysis and, particularly, do not change the requirements of California law of a corporation to provide for creditors before distributing assets. The case of *Bennett v. Hollingsworth (In re Hollingsworth)*, 224 B.R. 822 (Bankr. M.D. Fla. 1998), involved a claim for the denial of the debtor's discharge under Section 727. The court held that the failure of the debtor to list an airplane as an asset on his schedules was not a false oath because "the airplane was never technically owned by the debtor individually. The airplane was facially always owned by [the corporation]. Moreover, legal ownership of the [corporation] is held by another." *Id.* at p. 830.

In *In re Walhof Props., LLC*, 613 B.R. 479 (Bankr. M.D. Fla. 2020) the debtor was the corporate entity, which sold its primary asset for an amount sufficient to "pay all creditors in full, leaving a surplus" *Id.* at p. 480. The question

---

[60]  EOR 30 835-836

before the court was whether the surplus that was being distributed to the shareholders -- also in bankruptcy -- was "earnings" and thus exempted from their bankruptcy estate or was payment on an investment. The court did not consider whether the corporate form of the corporate debtor should be ignored for the benefit of the shareholder's estate.

The case of *In re Baker*, 68 B.R. 360 (Bankr. D. Or. 1986), involved the final report of an appointed Chapter 11 trustee for the payment of fees made to him from the assets of a corporation wholly owned by the debtors. The court did not hold that the assets of the corporation were property of the debtors, but that the Chapter 11 trustee of the debtors was acting in a fiduciary capacity to the bankruptcy estate, thus his payments were subject to §330 and related rules. *Id.* at pp. 363-364.

*MTLC Inv., Ltd. v. Jones (In re Hill)*, 265 B.R. 296, 300 (Bankr. M.D. Fla 2001), cited by the Trustee was partially reversed on appeal in *In MTLC Inv., Ltd. v. Jones (In re Hill)*, 2004 US DIST. Lexus 31985 (M.D. Fl 2004). The appeal court upheld the trial court's findings that the transfers in question were transfers of property of the debtor and not his wholly-owned corporation but based its ruling on the debtor's testimony at trial that he owned each of the properties at the time of the transfer. *Id.* at pp. 23-24. The court did not find the corporate assets to be property of the shareholder's bankruptcy simply as a result of the ownership in the shares.

The Appeal Brief relies on the unpublished New York bankruptcy case of *In*

*re Pisculli*, 2009 WL 700059 (Bankr. E.D.N.Y. 2009). As noted by the Bankruptcy

Court in the March Decision, this case involves denying the discharge of a

debtor.[61]  In discussing whether the assets of the owned corporation were assets of

the debtor's bankruptcy estate, the court in *Pisculli* noted that, having sold the

assets of the wholly owned corporation, the corporation "paid off the remaining

obligations of [the corporation]" and that the corporation "had no other debts" *In re*

*Pisculli, supra.,* 2009 WL 700059 at p. 9.  Here, the Trustee can allege at best that

there was a time when there was no other debt but he has admitted that Coastal

subsequently incurred further obligations. The Trustee cannot stop the clock at his

chosen time and ignore subsequent creditors.

        With no controlling law to support its position, the Trustee attempts to draw

an analogy to a pre-petition fraudulent-transfer action in the Washington case of

*DZ Bank AG Deutsche Zentral-Genossenschaftsbank v. Meyer,* 869 F.3d 839 (9th

Cir. 2017).  In that case a creditor, DZ Bank, brought an adversary proceeding

against the Meyers, the debtors, which asserted that their transfer of assets out of

their owned corporation was a fraudulent transfer under the Washington Uniform

Fraudulent Transfer Act and was non-dischargeable in the Meyers' bankruptcy. *Id.*

at p. 841. The action was against the debtors--not against the owned corporation or,

as here, against a transferee of the owned corporation. Rather, the court was

---

[61]   EOR 29 807

determining the amount of the damages that the creditor DZ Bank could claim was non-dischargeable in the bankruptcy of the individual debtor. The question at issue was whether the debtors were personally responsible for reducing the value of the shares of the corporation such that they should continue to be liable for the debt, not whether the corporation assets belonged to the debtors' bankruptcy estate. Furthermore, the cases referenced in the opinion, and relied on by the Trustee in the Appeal Brief, address the application of the fraudulent transfer law of the relevant state; none of them apply to California law. The cases are inapposite.

The Appeal Brief also cites a California judgement-collection case, *Curci Investment, LLC v. Baldwin*, 14 Cal.App.5th 214 (2017), to support its claim that the Coastal Funds were property of the Bankruptcy Estate without any transfer or other action. In that case, a creditor with a judgment against an individual sought to add an LLC as an additional judgment debtor, under an "outside reverse veil piercing theory". *Id.* at p. 214. The Appeal Brief complains that if the Bank had gotten a judgment pre-petition, it could have collected against Coastal under the same theory.[62] Even if that were the case, that simply describes a possible remedy for the Bank as a judgment creditor, not a conversion of Coastal's property into property of the Bankruptcy Estate. *See also*, *West Valley Med. Partners, LLC v. Shapow (In Re Shapow)*, 559 B.R. 51, 73 (2019) n.17 [distinguishing *Curci* as

---

[62]   Appeal Brief, p. 31

relating to LLC's not corporations].

    3.    <u>A claim of *alter ego* did not convert Coastal's assets to assets of the Bankruptcy Estate.</u>

The Trustee attempts to use its claim that Coastal was the *alter ego* of Brower as a basis for claiming that the assets of Coastal were simultaneously assets of the Estate for the purpose of this complaint. The argument fails, as discussed by the Bankruptcy Court, because in California a finding of *alter ego* is a remedy imposing liability on another, not a method by which two entities or their assets are merged.[63]

In the March Decision the Bankruptcy Court explains that a finding of *alter ego*:

> is not that a corporation will be held liable for the acts of another corporation because there is really only one corporation. Rather, it is that under certain circumstances a hole will be drilled in the wall of limited liability erected by the corporate form; for all purposes other than that for which the hole was drilled, the wall still stands. When it is claimed that a parent corporation should be liable because it is the *alter ego* of its subsidiary, equity commands that the corporate wall be breached. Yet the wall remains: the parent is liable through the acts of the subsidiary, but as a separate entity.[64]

*See also, Mesler v. Bragg Mgmt. Co.*, 39 Cal.3d 290, 301 (1985). The Bankruptcy Court concluded:

> Thus, the theory of *alter ego* liability breaks down

---

[63] EOR 29 805-807

[64] EOR 29-805

> though the corporate wall in order to create some liability
> on another party to prevent injustice. It does not allow a
> parent to take assets out of a subsidiary. *See Communist
> Party v. 522 Valencia, Inc*., 35 Cal.App.4th 980, 995
> (1995) (finding no authority to apply *alter ego* in order to
> establish a relationship of identity between a defendant
> corporation and a plaintiff to allow the plaintiff to obtain
> assets of the corporation rather than apply *alter ego* to
> impose liability to another individual or entity).[65]

The Bankruptcy Court noted that the cases on which the Trustee was then
relying were not discussing California law.  One case, also cited in the Appeal
Brief, is *In re Bellardita*, 2008 WL 4296554, Bankr. E.D.Cal. (Sept. 19, 2008),
which relies on the Ninth Circuit case, *Suhl v. Bumb,* 438 F.2d 869 (9th Cir. 1965).
*Suhl,* a case under the Bankruptcy Act, analyzed the jurisdiction of the bankruptcy
proceeding at the time—and particularly whether the referee supervising the case
had the authority to rule on whether property in the possession of a third-party was
actually property of the bankruptcy estate. *Suhl v. Bumb, supra.*, 438 F.2d at p.
872.  Finding that the referee did not have jurisdiction over the property in
question, the court reversed the referee's finding and required a legal action to be
filed.  *Id.* at p. 874.  In *In re Bellardita*, the court did not focus on the distinction
between whether the non-debtor entity was one and the same with the debtor (as is
asserted by the Trustee here) or is simply liable for the debt in question.

The remaining cases cited in the Appeal Brief do not mandate a different

---

[65]   EOR 29-805

result: *In re Mckenzie Energy Corp.*, 228 B.R. 854 (Bankr. S.D. TX 1998),

addresses a challenge to a fee application in Texas, applying Texas law;

*In re Am. Int's Refinery*, 402 B.R. 728 (Bankr. W.D. La. 2008), discusses Nevada

law;[66] *Bloomberg v. Riley*, 351 B.R. 662 (Bankr. E.D. Wis. 2006), addresses

whether an individual should be denied a discharge under Section 727 and does not

discuss California law. The Appeal Brief also cites the case of *Kismet Acquisition,*

*LLC v. Icenhower (In re Icenhower)*, 757 F.3d 1044, 1050 (9th Cir. 2014). In that

case, the reviewing court declined to overturn the lower court's ruling that a post-

petition transfer of an owned LLC was the bankruptcy property, finding that the

lower court had consolidated the owned entity into the bankruptcy *nunc pro tunc* to

the beginning of the case. *Id.* at p. 1051. In contrast to *Icenhower*, no

consolidation has occurred in this case.

Finally, the history of this action prevents the court from ignoring Coastal's

corporate form under a theory of *alter ego*. For the Bank, acting for the

Bankruptcy Estate, spent two years litigating the Enhancement Action to eliminate

certain Coastal shareholders and to identify the state of incorporation.[67] The

Trustee cannot now ask the court to treat the corporation as if it had never existed

---

[66] The Appeal Brief has a long discussion regarding the Trustee's standing to bring an *alter ego* claim against Coastal, pp. 34-35. That may be true, but no such claim has been brought. Coastal is not a defendant.
[67] EOR 30 830-832

and that its assets at all times belonged to Brower individually.

4.  <u>Coastal's sale of the Wine Estate property without Court approval did not transform Coastal's assets into assets of the Bankruptcy Estate.</u>

The Trustee argues that because Coastal's sale of the Wine Estate Property required approval of the shareholder of the corporation, the corporation had to seek permission from the shareholder for every subsequent transaction.[68] But nothing requires a corporation to obtain a shareholder's approval for every transaction after a major sale of the corporation's assets. Rather, Corporations Code Section 1001 does not divest the board of directors of a corporation from its authority. *See, e.g.* Cal. Corp. Code §1001 (b) [providing that the board may abandon a proposed transaction even if it has been approved]. The Trustee also provides no explanation of how he can combine hundreds of payments to multiple defendants over several years into a single event in an effort to characterize all of them together as a "transaction" that needs to be approved by a shareholder under Corporation Code 1001.

The Trustee also to suggests that because the post-sale payments by Coastal were not in Coastal's ordinary course of business, each payment required the shareholder's and the Bankruptcy Court's approval under the Bankruptcy Code.[69]

---

[68]  Appeal Brief, p. 38
[69]  Appeal Brief, p. 38

But Coastal was not in bankruptcy, so whether Coastal's actions were "in the ordinary course" of its business was irrelevant. The Trustee cites the case of *In re Williams*, 104 B.R. 296 (Bankr. C.D. Cal. 1989), for the position that a trustee can avoid the payment of proceeds of a post-petition sale of a bankrupt entity's assets.[70] But the *Williams* case is inapplicable because the Wine Estate Property that was sold and the proceeds paid were not owned by the Bankruptcy Estate, but by Coastal, a non-debtor, unlike the case in *Williams*. The fact that the payments here were made outside of the ordinary course of *Coastal's* business did not subject them to the approval by the Bankruptcy Court.

Finally, as noted by the Bankruptcy Court, even if the Trustee as Coastal's shareholder were able to rescind the Wine Estate sale, or even the hundreds of individual transfers named in the SAC, on the claim that they were not approved by the shareholder, that would not mean that the Coastal Funds were Estate Property at the time they were paid.[71]

     5.    <u>The Bank, acting on behalf of the Bankruptcy Estate, had remedies in Bankruptcy to protect the Coastal Funds pending resolution of share ownership and payment of Coastal's creditors.</u>

The Appeal Brief bemoans the abuses that a bankrupt debtor who owns a company may work by having the company withhold payment to a few creditors

---

[70] Appeal Brief, p. 38
[71] EOR 38 1146

while wasting the remaining company's funds.[72] But the complaint is unconvincing in light of the remedies that are available to prevent such abuses—and were, in fact, available to the Bank acting for the Bankruptcy Estate.

In addition to the obvious remedy of appointing a Chapter 11 Trustee or converting the case to a Chapter 7, the Bank could have used the adversary proceeding against Coastal to obtain a preliminary injunction. That could have prevented it and Brower from using the Coastal Funds by putting them in a blocked account. In fact, it appears that the Bank began that process but did not finish it. As reflected in the docket for the Enhancement Action, a temporary protective order was issued on an order to show cause why a preliminary injunction should not issue.[73] Apparently the court did not ultimately issue the injunction against Coastal.[74] This left Brower in control of Coastal, and Coastal in control of the Coastal Funds, free to use it to pay its trade creditors, including attorneys JRG, as well as taxing agencies. The fact that the Bank did not take advantage of the legal remedies available to it does not, of course, excuse Brower's alleged misuse of the Coastal Funds. The existence of the remedies, however, should be considered before the bankruptcy court exercises any equitable power to

---

[72] Appeal Brief, p. 22
[73] EOR 1256
[74] The docket reflects a stipulation to allow the Brower to sell a residence, but does not show an injunction against using Coastal Funds.

convert non-debtor assets to assets of a Bankruptcy Estate.

**C.**    **Any error by the Bankruptcy Court regarding the ownership of the Cypress Funds would have been harmless.**

**1.**    **The claims are largely time barred.**

The Trustee seeks to recover over 40 individual payments made by Coastal to JRG from February 2016.[75] The Original Complaint was filed on July 22, 2021—more than five years after the initial challenged transfer, and most of the claim is time barred. The claim under Section 549 (and the related claims for recovery, accounting, and recission) are limited to two years. 11 U.S.C. § 549(d). The claim for conversion is limited to three years (Cal. Civ. Proc. § 338(c)(1).

The Trustee alleges that the Plan that the Bank confirmed in 2017 tolled all statutes of limitations from the date the Plan was confirmed to its effective date.[76] The Plan, however, does not state that it tolls any statute of limitation from running, nor does it state an injunction against potential defendants from claiming the protection of a statute of limitations.[77]

More importantly such a plan provision would be unenforceable. There is no dispute that the right to enforce a statute of limitations is a substantive right held by any defendant. A bankruptcy filing does not suspend all statutes of

---

[75] EOR 30 1029
[76] EOR 30 823
[77] EOR 6 102-132 (the Plan)

limitations indefinitely but, for those periods that have not run as of the date of the petition, will extend it only two years under Section 108(a). 11 U.S.C. § 108(a). Time limits for actions brought under the Bankruptcy Code are stated in the statute, and there is no general right for a debtor to extend a statute of limitation unilaterally. Nor can such suspension be created in a Chapter 11 plan, particularly where the parties whose rights are impacted received no notice and had no opportunity to object to the limitation of their rights.  11 U.S.C. §1129(a)(1) [a plan must comply with the provisions of the Bankruptcy Code – including statutes of limitation; *see also,* Bankruptcy Rule 3016(c)(3) [requiring that a plan providing an injunction of conduct that is not otherwise enjoined under the Code must state the details of the injunction and the parties to be effected in bold in the plan.]

As there was no notice that the Plan would toll statutes of limitation, nor even specific language in the Plan doing so, the Trustee cannot now claim that JRG is enjoined from asserting that the claims are time-barred.  *See e.g. Deocampo v. Potts*, 836 F.3d 1134, 1144-45 (9th Cir. 2016) [court refused to infer an injunction where there had been no specific finding of fact or notice regarding the injunction.] *See also: In re Ground Round*, 2007 Bankr. LEXIS 503*11 (Bankr. D. Mass.) (2007) [finding that "cobbling an injunction together from the Confirmation Order, the Plan and the Settlement, is insufficient to reach the level of notice and clarity

necessary under Fed. R. Bankr. P. 2002(c)(3) and 3016."]; and *In re Mallinckrodt PLC*, 2022 Bankr. LEXIS 273 (Bankr. Del. 2022) * 37 [setting forth in detail the requirements to provide due process to third-parties impacted by expanded injunctions in a plan.][78] *See also, Levin v. Maya Contr. (In re Maya Constr. Co)*, 78 F.3d 1395 (9th Cir 1996) [stating rule that when a known party is not give formal notice they will not be bound by a Chapter 11 Plan, citing *New York v. New York, New Haven & Hartford R.R. Co,* 344 U.S. 293, 297 (1953*)*].

This issue was raised in motions to dismiss the Original Complaint, and the court made a preliminary comment in the November Decision. The Court stated that "as to the motions to dismiss," the claims were not barred but that, because "multiple claims are likely to be re-pled," it was "premature" to make a final determination on the matter.[79] The challenge to the claims as time-barred was also raised in the motion to dismiss the SAC, which included new claims.[80] The August Decision disposed of the SAC based on the Trustee's failure to support the claim that the Coastal Funds were property of the estate and did not reach the question of whether the claims were time-barred.

---

[78] Although the cases addressing whether a plan of reorganization can impose greater injunctions against third-parties than are provided for in the Bankruptcy Code usually deal with prohibiting a party from asserting a claim, there is no different analysis where, as here, a party is asserting a defense.
[79] EOR 20 509
[80] EOR 37 1097-8

### 2.    As a matter of law, no action can be stated on the alleged facts for conversion, turnover, or disgorgement.

As is common in complaints where the plaintiff lists every possible claim, several here cannot be supported by the facts pled. The SAC seeks to recover money paid to JRG over a period of time by Coastal.  It does not allege that the money has been preserved in trust for Coastal or can be otherwise traced. It is black-letter law that "[m]oney cannot be the subject of a cause of action for conversion unless there is a specific, identifiable sum involved, such as where an agent accepts a sum of money to be paid to another and fails to make the payment.' A 'generalized claim for money [is] not actionable as conversion.'" *PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP* (2007) 150 Cal.App.4th 384, 395 [58 Cal.Rptr.3d 516], internal citations omitted.

Nor can there be an action for conversion where the owner authorized the challenged transfer.  Here, the payments were made by Coastal—the owner of the funds when they were paid to JRG for its services. "[T]he law is well settled that there can be no conversion where an owner either expressly or impliedly assents to or ratifies the taking, use or disposition of his property." *Farrington v. A. Teichert & Son, Inc*. 59 Cal.App.2d 468, 474 (1943), (internal citations omitted.)

A claim for turnover under Bankruptcy Code § 542 also cannot be made for money.  *In re JMC Telecom LLC,* 416 B.R. 738, 745 (C.D. Cal. 2009) [holding that, where the complaint does not state the defendant is still in possession of the

money actually transferred, an action for turnover under Bankruptcy Code Section 542 does not lie.]

Finally, the claim for disgorgement under Bankruptcy Code Section 330 seeks to recover from JRG the fees that Coastal paid for legal services provided by JRG, alleging that JRG provided services for the "debtor" and had not been authorized as counsel under Section 330.[81]  Even if JRG had provided services to the Bankruptcy Estate or to Brower in his role as debtor-in-possession, which is denied, Section 330 does not provide a remedy for a trustee to sue to recover attorney's fees.  In the November Decision, after reviewing the operation of Sections 327 through 330 regarding retention and payment of attorneys, the Bankruptcy Court stated: "there are no additional provisions in the Bankruptcy Code for payment of damages."[82]

## VI.  CONCLUSION

The Trustee's actions against JRG all depend on the claim that the Coastal Funds used to pay JRG were actually owned by the Brower Bankruptcy Estate at the time they were paid.  But, as explained by the Bankruptcy Court, none of the Trustee's theories convert the ownership of the Coastal Funds to the Bankruptcy Estate.

The Appeal Brief does not identify any error of law by the Bankruptcy

---

[81]  EOR 30 855
[82]  EOR 20 511

Court. JRG requests, therefore, that the Bankruptcy Appellate Panel sustain the

Judgment entered in JRG's favor.

Dated: January 5, 2023                BINDER & MALTER, LLP


                                      /s/Wendy Watrous Smith
                                      Wendy Watrous Smith
                                      Attorneys for Johnson, Rovella, Retterer,
                                      Rosenthal & Giles, LLP, dba JRG Attorneys at
                                      Law

## VII. CERTIFICATION AS TO INTERESTED PARTIES

The undersigned certifies that the following parties have an interest in the outcome of this appeal. These representations are made to enable the judges of the Panel to evaluate possible disqualification or recusal:

1. Robert Brower, Sr., Debtor;

2. Michael G. Kasolas, Liquidating Trustee for the Robert Brower, Sr. Liquidating Trust;

3. Aurora Capital Advisors, Appellee;

4. Aurora Capital Advisors, LLC, defaulted defendant in the underlying adversary proceeding;

5. Med-Venture Investments, LLC, defaulted defendant in the underlying adversary proceeding;

6. Richard Babcock, Appellee;

7. Anthony Nobles, Appellee;

8. JRG Attorneys at Law, Appellee;

9. Oldfield Creely, LLP, Appellee;

10. Patricia Brower, solely as trustee of the Brower Trust (2015), dated June 30, 2015, defendant in the underlying adversary proceeding;

11. Great American Wineries, Inc., defendant in the underlying

adversary proceeding;

12. Deerleaf Holdings, Inc., defendant in the underlying
adversary proceeding;

13. Robert Brower, Jr., defendant in the underlying adversary proceeding;

14. Coastal Wine Services, LLC, defaulted defendant in the underlying
adversary proceeding;

15. Wilford Buth Lindley, defaulted defendant in the underlying
adversary proceeding;

16. Pohanka of Salisbury, Inc., defendant in the underlying adversary
proceeding; and

17. Jaurigue Law Group, defaulted defendant in the underlying adversary
proceeding.

## VIII. CERTIFICATION OF COMPLIANCE

The text in this brief is proportionally spaced. The typeface is Times New
Roman, 14-point. The word count generated by Word for the portions subject to
the restrictions of Rule 8015(a)(7) of the Federal Rules of Bankruptcy Procedure,
inclusive of text and footnotes, is 9,053.

Dated: January 5, 2023 BINDER & MALTER, LLP

/s/Wendy Watrous Smith
Wendy Watrous Smith
Attorneys for Johnson, Rovella, Retterer,
Rosenthal & Giles, LLP, dba JRG Attorneys at
Law

IX. **CERTIFICATE OF SERVICE WHEN NOT ALL CASE PARTICIPANTS ARE CM/ECF PARTICIPANTS**

I hereby certify that on January 5, 2023, I electronically filed the foregoing document with the Clerk of the Court for the Bankruptcy Appellate Panel for the Ninth Circuit by using the CM/ECF system.

I further certify that parties of record to this appeal who either are registered CM/ECF users, or who have registered for electronic notice, or who have consented in writing to electronic service, will be served through the CM/ECF system.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed at Santa Clara, California on January 5, 2023.

/s/Andrea Lorenz
Andrea Lorenz