BAP No. 22-1215

**UNITED STATES BANKRUPTCY APPELLATE PANEL
FOR THE NINTH CIRCUIT**

In re Robert Brower, Sr.

Bankr. Case No. 5:15-bk-50801-MEH
Adv. Case No. 5:21-ap-05029-MEH

MICHAEL G. KASOLAS, LIQUIDATING TRUSTEE FOR THE ROBERT

BROWER, SR. LIQUIDATING TRUST,

Appellant,

v.

AURORA CAPITAL ADVISORS, et al.,

Appellees.

Appeal from Partial Final Judgment Entered by the United States Bankruptcy
Court for the Northern District of California

**REPLY BRIEF OF APPELLANT**

Steven T. Gubner – Bar No. 156593
Jason B. Komorsky – Bar No. 155677
Jessica L. Bagdanov – Bar No. 281020
Jessica S. Wellington – Bar No. 324477
BG LAW LLP
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Tel: 818-827-9000
Fax: 818-827-9099
sgubner@bg.law
jkomorsky@bg.law
jbagdanov@bg.law
jwellington@bg.law

## **<u>TABLE OF CONTENTS</u>**

I.    INTRODUCTION ....................................................................................1

II.   ARGUMENT..........................................................................................4

    A.    The SAC Pleads Sufficient Facts that the Proceeds are Property of the Estate Under 11 U.S.C. §§ 541(a)(6) and (a)(7) ...................................4

    B.    The SAC Pleads Sufficient Facts that the Proceeds are Property of the Estate Under 11 U.S.C. §§ 541(a)(1) ....................................................6

    C.    The SAC Pleads Sufficient Facts that the Proceeds are Property of the Estate Pursuant to an Alter Ego Remedy ............................................10

    D.    The SAC Sufficiently Pleads Sufficient Facts to State a Claim for Recission under California Corporations Code § 1001 ......................11

    E.    The Claims in the SAC are Not Barred by the Statute of Limitations 13

        1.    The Provisions of the Plan Tolled the Statute of Limitations...14

        2.    Alternatively, the Statute of Limitations was Tolled Under the Adverse Domination Doctrine .................................................17

    F.    The Other Claims Against JRG Attorneys are Sufficiently Pled........19

III.  CONCLUSION........................................................................................20

IV.   CERTIFICATION OF COMPLIANCE.......................................................21

# TABLE OF AUTHORITIES

Page

**Cases**

*Bank of New York Mellon v. 251 Gotham LLC*,
604 B.R. 71 (Bankr. S.D. Ala. 2019) ...................................................13

*Beltran v. Capitol Records, LLC*,
2013 WL 968248 (N.D. Cal. Mar. 12, 2013) .........................................9

*Chantel v. Pierce*,
2015 WL 3988985 (9th Cir. BAP July 1, 2015),
aff'd, 693 F. App'x 723 (9th Cir. 2017) ..............................................10

*Citicorp Acceptance Co. v. Robison (In re Sweetwater)*,
884 F.2d 1323 (10th Cir.1989) ...........................................................16

*Duvoisin v. East Tenn. Equity Ltd. (In re Southern Indus. Banking Corp.)*,
59 B.R. 638 (Bankr. E.D. Tenn. 1986) ..............................................16

*In re Art & Architecture Books of 21st Century*,
2019 WL 9243053 (C.D. Cal. Dec. 6, 2019) .......................................13

*In re Baker*,
68 B.R. 360 (D. Or. 1986) ..................................................................20

*In re Brown*,
953 F.3d 617 (9th Cir. 2020) .................................................................2

*In re Consolidated Capital Equities Corp.*,
143 B.R. 80 (Bankr. N.D. Tex. 1992) ................................................16

*In re Delano Partners, LLC*,
2014 WL 4966476 (E.D. Cal. Sept. 29, 2014) ...................................13

*In re DeRosa-Grund*,
544 B.R. 339 (Bankr. S.D. Tex. 2016) ..............................................13

*In re First Prot., Inc.*,
440 B.R. 821 (B.A.P. 9th Cir. 2010) ....................................................4

*In re Manchester Gas Storage, Inc.*,
309 B.R. 354 (Bankr. N.D. Okla. 2004) .............................................13

*In re Monument Auto Detail*,
226 B.R. 219 (B.A.P. 9th Cir. 1998) ..................................................20

*In re Pisculli*,
2009 WL 700059 (Bankr. E.D.N.Y. Mar. 4, 2009),
aff'd 426 B.R. 52, 62 (E.D.N.Y. 2010),
aff'd, 408 F. App'x 477 (2d Cir. 2011) .................................................6

*In re Redf Mktg., LLC,*
    536 B.R. 646 (Bankr. W.D.N.C. 2015) ...................................16

*In re Roussos,*
    2016 WL 5349717 (Bankr. C.D. Cal. Sept. 22, 2016) .........................13

*In re S. Indus. Banking Corp.,*
    66 B.R. 349 (Bankr. E.D. Tenn. 1986)....................................16

*In re Singh,*
    2019 WL 1231146 (B.A.P. 9th Cir. Mar. 14, 2019) ...................... 10, 11

*In re Zeman,* No. 09-52559-C,
    2010 WL 3123144 (Bankr. W.D. Tex. Aug. 6, 2010) .........................13

*Int'l Fin. Servs. Corp. v. Chromas Techs. Can., Inc.,*
    356 F.3d 731 (7th Cir.2004)...........................................10

*Jablon v. Dean Witter & Co.,*
    614 F.2d 677 (9th Cir. 1980) ....................................... 14, 19

*Jeppi v Brockman Holding Co.,*
    34 Cal. 2d 11 (1949)................................................12

*Miller v. McColgan,*
    17 Cal. 2d 432 (1941) ......................................... 1, 2, 4, 7

*Nelson v. Anderson,*
    72 Cal. App. 4th 111 (1999)............................................5

*San Leandro Canning Co. v. Perillo,*
    211 Cal. 482 (1931)................................................18

*Shapiro v. Henson,*
    739 F.3d 1198 (9th Cir. 2014) ..........................................19

**Statutes**

11 U.S.C.,
    Section 541(a)..................................................... 2, 6, 10, 11

11 U.S.C.,
    Section 1123(b)(3)(B) ..............................................16

11 U.S.C.,
    Section 330 .......................................................19

11 U.S.C.,
    Section 363 .......................................................13

11 U.S.C.,
    Section 363(b) ................................................... 12, 13

11 U.S.C.,
  Section 541 ....................................................................................................10

11 U.S.C.,
  Section 541(a)(6) ........................................................................................4, 6

11 U.S.C.,
  Section 541(a)(7) ........................................................................................4, 6

11 U.S.C.,
  Section 542 ...................................................................................3, 10, 15, 19

11 U.S.C.,
  Section 549 .........................................................................................3, 10, 15

11 U.S.C.,
  Section 727 ......................................................................................................7

Cal. Rev. & Tax. Code,
  Section 23304.1 ..............................................................................................9

California Corporations Code,
  Section 1001 ..................................................................................3, 11, 12, 13

**Rules**

Federal Rules of Civil Procedure,
  Rule 12(b)(6) ...................................................................................................2

Michael G. Kasolas, Liquidating Trustee for the Robert Brower, Sr. Liquidating Trust ("Trustee"), hereby submits his reply brief in support of his appeal of the bankruptcy court's Judgment.[1]

# I.

## INTRODUCTION

All parties agree that under California law, a shareholder has an expectancy interest in corporate property and earnings and becomes the owner of a portion of each when the corporation is liquidated **or** when a portion of the corporation's profits are set aside for dividend payments. *Miller v. McColgan*, 17 Cal. 2d 432, 436 (1941). Had Coastal continued "operating" after the sale (a question of fact), the Estate likely would have continued to have only an expectancy interest in Coastal's property, *i.e.*, in Coastal's profits, and would only become the owner of such profits when Coastal's Board in its discretion declared a dividend. Both the bankruptcy court and Appellees overlooked the *Miller* court's disjunctive **or** in identifying a separate mechanism—liquidation—whereby a shareholder's rights vest as a result of the sale of the corporation's lone operating asset.

It cannot be disputed that a shareholder has a direct interest in the net proceeds of an entity that liquidates. As alleged in the SAC (and under California law), the postpetition sale of Coastal's lone asset was a defined Liquidation Event and a liquidation. As further alleged, under the Amended Articles and California law, the Estate as sole shareholder had an absolute legal right to the Net Proceeds from the sale; it was no longer an expectancy interest but a vested one. Coastal was a non-operating entity with proceeds from the sale of its lone asset. The liquidation created a direct interest in the Net Proceeds.

---

[1] Initial capitalized terms used but not defined herein have the same meaning ascribed to them in the Opening Brief.

Yet, on a 12(b)(6) motion to dismiss, and eschewing uniform case and statutory authority and the express terms of the Amended Articles, the bankruptcy court concluded that additional unidentified steps needed to be taken before the Net Proceeds could become property of the Estate.  Setting aside the fact that this is a factual issue that should not be decided on a motion to dismiss, the bankruptcy court disregarded the well pled allegations of the SAC as well as the plain language of Section 541(a), that property of the Estate includes "all legal or equitable interests of the debtor in property"—"wherever located and by whomever held."  11 U.S.C. § 541(a).  Under the Amended Articles, once a Liquidation Event occurred the Net Proceeds belonged to the sole shareholder. The Estate is and was the sole shareholder of Coastal at the time of the Liquidation Event.  The *Miller* court's use of the word **or** dictates the same result—a liquidation, unlike an operating company's decision to make a dividend distribution, does not require further discretionary action by the Board to create a direct right in the lone shareholder.

Appellees emphasize that Debtor did not transfer the money from Coastal's bank account to the Estate, attempting to draw a distinction between Debtor's left and right hand.  Whether Debtor complied with his own Amended Articles does not change the fact that the Estate's legal right to the Net Proceeds had vested. Further, this argument misses the entire crux of the allegations in the SAC—that Debtor withheld the distribution to defraud creditors of the Estate.  As alleged, Debtor had sole control over the dissipation of the Net Proceeds, and he intentionally did not make the requisite distribution to the Estate in furtherance of his fraudulent scheme.  "The Code reflects a firm policy of not rewarding fraud or bad-faith debtors."  *In re Brown*, 953 F.3d 617, 623 (9th Cir. 2020).  The Trustee and creditors of the Estate should not be hamstrung because of Debtor's fraud and his inaction does not negate the mandates of the Code and the Amended Articles.

2

The SAC adequately pleads that the Net Proceeds are property of the Estate under three theories: (i) the provisions of the Amended Articles and California law; (ii) via Debtor's sole control of and 100% ownership interest in the stock of a non-operating entity that liquidated its sole asset; and (iii) the alter ego doctrine. Each of these theories provide a basis for the Net Proceeds to be property of the Estate.

Further, the SAC adequately pleads a claim for recission under California Corporations Code § 1001 because the sale of the Wine Estate Property was a sale of all Coastal's assets. Thus, the Estate as the sole shareholder had to consent to the sale, which in turn required bankruptcy court approval under Section 363. Debtor did not obtain the Estate's consent for the sale, nor did he obtain court approval. Thus, any further action with respect to the Net Proceeds of this otherwise unapproved act would be subject to recission under Section 1001.

Moreover, contrary to Appellees' assertions, the claims in the SAC are not time barred because the provisions of the confirmed Plan specifically provide that Estate causes of action, including claims under 11 U.S.C. §§ 542 and 549, shall survive confirmation of the Plan through the Effective Date of the Plan and, further, did not vest in the Trustee the right to bring such claims until the Effective Date. Based upon the Plan language, the bankruptcy court properly found that the Trustee's claims were not barred by the statute of limitations. Independently, the doctrine of adverse domination applies to equitably toll any statute of limitations in this case because Debtor and his wife were solely in control of Coastal until September 2020 when the Trustee was elected as sole director of Coastal.

The SAC pleads sufficient facts to state plausible claims for relief. The Trustee respectfully submits that the bankruptcy court erred when it dismissed the SAC with prejudice and respectfully requests that this Panel vacate the Judgment and reverse the Orders of the bankruptcy court.

## II.

## ARGUMENT

**A.**   **The SAC Pleads Sufficient Facts that the Proceeds are Property of the Estate Under 11 U.S.C. §§ 541(a)(6) and (a)(7)**

Appellees argue that because Debtor did not transfer the Net Proceeds to himself, the Net Proceeds cannot be property of the Estate. Appellees' arguments focus solely on the name on the bank account and ignore the Estate's legal right to the Net Proceeds pursuant to the Amended Articles. It is undisputed that Debtor's 100% interest in the stock of Coastal is an asset of the Estate. However, not only do economic rights under the shares become property of the Estate but also Debtor's rights under the Amended Articles become property of the Estate. *In re First Prot., Inc.*, 440 B.R. 821, 832 (B.A.P. 9th Cir. 2010) ("the bankruptcy court correctly found, as a matter of law, that Debtors' membership interests and contractual rights under the operating agreement became property of their estate").

The Amended Articles, like the *Miller* decision, recognize two scenarios where a shareholder's rights become vested: a discretionary dividend provided for in ART. III.B.1.(a) [**EOR 30 870**], which entitlement to a dividend is only "when, as and if declared by the Board of Directors. . .," and the absolute entitlement of the shareholder to the proceeds from a Liquidation Event provided for in ART. III.B.2 [**EOR 30 871**]. Notably, the latter provisions relating to a Liquidation Event contain no requirement of a declaration by Coastal's Board; rather, it is the liquidation itself (consistent with *Miller*) that creates the shareholder's rights. Once Debtor filed his chapter 11 petition, his shareholder rights in the Net Proceeds pursuant to the Amended Articles transferred to the Estate. Thus, when Coastal liquidated its sole asset, the Estate had a legal and equitable interest in the Net Proceeds as proceeds of Debtor's 100% interest in Coastal's stock.

4

Appellees cite to *Nelson v. Anderson*, 72 Cal. App. 4th 111, 126 (1999) for the proposition that "[s]hareholders own neither the property nor the earnings of the corporation. Shareholders own only stock, from which their income is derived upon the liquidation of assets or the declaration of dividends by the directors." Like *Miller*, the *Nelson* court recognized that a liquidation of assets creates shareholder income. This is not a case where Coastal had profits from business operations upon which a dividend, at Coastal's Board's discretion, could be made. Rather, Coastal owned a singular asset, which was liquidated and, thus, created the Estate's rights in the proceeds from the defined Liquidation Event.

JRG Attorneys argues that "the Trustee can allege at best that there was a time when there was no other debt but he has admitted that Coastal subsequently incurred further obligations. The Trustee cannot stop the clock at his chosen time and ignore subsequent creditors." Doc. 12, p. 24. However, under the Amended Articles, Coastal had no right to create new obligations, let alone pay for any obligations incurred subsequent to the sale of the Wine Estate Property from the Net Proceeds. The Amended Articles mandated that the proceeds be distributed to the shareholder sans discretion. While Coastal was free to propose a new business plan for Estate (shareholder) approval (it did not), it was not free to use the Net Proceeds without such approval. As pled, Debtor admitted to the bankruptcy court that Coastal had no discretion to use the Net Proceeds without shareholder approval of a new operating plan in light of the Liquidation Event. **EOR 30 ¶¶** 11, 91–94, Exhibits 2 through 5.

Once there was a Liquidation Event, the Net Proceeds were required to be distributed to the Estate, the lone shareholder, pursuant to the Amended Articles. Once liquidated, the officers and directors were divested of any right to reinvest the Proceeds or to use the Net Proceeds to continue operating Coastal. The Amended Articles left no discretion to Coastal's Board, Debtor and his wife, to

dissipate the Net Proceeds for their own personal use. Thus, both the Net Proceeds of the sale of the Wine Estate Property ***and*** control over the Net Proceeds belonged to the Estate. Pursuant to the Amended Articles, the sole shareholder no longer possessed an indirect right to dividends or distributions, as it might with respect to an operating entity's income; rather, California law and the Amended Articles created an immediate direct right in the Net Proceeds. [2]

The fact that Debtor did not make the distribution does not negate that the Estate had a legal and equitable interest in the Net Proceeds under the Amended Articles and California law. The SAC sufficiently pleads that the Net Proceeds are property of the Estate under 11 U.S.C. §§ 541(a)(1), (a)(6) and (a)(7). *See In re Pisculli*, 2009 WL 700059 *3 and n.3 (Bankr. E.D.N.Y. Mar. 4, 2009), *aff'd* 426 B.R. 52, 62 (E.D.N.Y. 2010), *aff'd,* 408 F. App'x 477 (2d Cir. 2011) (finding that proceeds from the sale of assets of the debtor's wholly owned corporation were property of the estate under 11 U.S.C. §§ 541(a)(1) and (a)(6)).

**B.    The SAC Pleads Sufficient Facts that the Proceeds are Property of the Estate Under 11 U.S.C. § 541(a)(1)**

The Aurora Defendants argue this Panel "should not consider any portion of the arguments or authorities presented under heading 'C' of the Opening Brief, as Appellant failed to present these arguments to the bankruptcy court." Doc. 11, p. 18. This is false. **EOR 28 780–88**. The bankruptcy court rejected the Trustee's

[2] The Aurora Defendants argue that the Trustee concedes that the Estate did not have a direct interest in the Net Proceeds by quoting to a portion of the Trustee's First Claim for Relief in the SAC at EOR 30 857. However, the Aurora Defendants fail to quote the rest of the sentence, which states "alternatively, directly to the Estate given its direct right in the proceeds established by the Amended Articles as a result of the Liquidation Event." **EOR 30 857**.

argument. **EOR 29 807–10**. It is thus appropriate for this Panel to consider the Trustee's argument.

As stated above, under California law, a shareholder becomes the owner of a portion of a corporation's property when the corporation is liquidated. *Miller*, 17 Cal. 2d at 436. Here, the SAC alleged that upon the consummation of the sale, Coastal ceased operations and thereafter paid all its creditors. **EOR 30, ¶¶ 4, 7, 85, 87, 99.** Like in *Pisculli*, as Coastal's sole shareholder and owner and direct beneficiary, the Estate had a direct interest in the Net Proceeds via Debtor's 100% interest in the stock of Coastal. Upon consummation of the sale, Coastal effectively ceased to exist and Debtor held the Net Proceeds in trust for the Estate as sole shareholder of Coastal's stock. As there were more than sufficient funds to pay all Coastal's legitimate creditors and the sale generated excess proceeds, the Estate had a direct interest in the entire amount of the Net Proceeds.

Appellees contend this case is distinguishable from *Pisculli* for two reasons: (i) because Coastal owed taxes from the sale, Coastal could not have liquidated; and (ii) *Pisculli* is a case under 11 U.S.C. § 727. As to the first contention, Appellees' argument contradicts the well pled allegations in the SAC. As pled, the Estate did not claim a right to the gross proceeds, but solely to the Net Proceeds after provision for all legitimate creditors existing at the time of the liquidation. Coastal's debts were paid for in escrow, as well as one illegitimate debt purportedly owed to defaulted defendant Med-Venture Investments, LLC ("Med-Venture") and, further, monies were subsequently paid for tax purposes, and then the subsequent illegitimate debt to defaulted defendant Aurora Capital Advisors, LLC ("Aurora LLC"). Even if taxes were owed because of the Liquidation Event, that does not negate that the Estate had a legal and equitable interest in the Net Proceeds as the lone shareholder of Coastal. Indeed, as alleged, Debtor even

7

overpaid Coastal's taxes to hide additional dissipated funds that he then received as a refund on the tax overpayment. **EOR 30**, ¶ 99.

Appellees' argument—looking at the timing of when the last legitimate creditor was paid, as opposed to the amounts owed legitimate creditors—does not change the Estate's legal and equitable interest in the Net Proceeds as the sole shareholder of a non-operating company that liquidated its sole asset. Although, the amount of the Net Proceeds that became property of the Estate may change based on the amount of Coastal's legitimate debt, providing for Coastal's legitimate creditors does not invalidate that the Estate had a legal and equitable right to the Net Proceeds. It matters not when the IRS is in fact paid but simply that the Estate's interest is net of what is owed to the IRS. California Corporations Code § 2004 requires that a corporation make provision for all known debts and obligations, not that all known debts and obligations be paid. As alleged in the SAC, there were sufficient proceeds from the sale to provide for all Coastal's legitimate debts, and as further alleged, Coastal paid all its legitimate creditors. The alternative, argued by Appellees, is that the timing of the payment to the IRS creates a loophole whereby a liquidated and inactive entity can fraudulently dissipate its assets including to two suspended corporations that are not even entitled to operate in California.

The Aurora Defendants argue that even if any of the Net Proceeds are property of the Estate, the transfers to Med-Venture and Aurora LLC were not made from property of the Estate because Med-Venture and Aurora LLC were creditors of Coastal. Doc. 11, pp. 15–17. Med-Venture and Aurora LLC are suspended corporations, cannot answer the SAC, and have not sought a continuance to revive their corporate status. The Aurora Defendants cannot seek to press the defenses that might otherwise be made by the two suspended corporations. *See Beltran v. Capitol Records, LLC*, 2013 WL 968248, at *3 (N.D.

8

Cal. Mar. 12, 2013) ("person standing in close relationship to the suspended corporation, as she does, cannot sue to enforce the agreement because doing so would be contrary to Section 23301 [of the California Tax Code]").  The Aurora Defendants have no standing to raise arguments not belonging to them.  Both entities are currently in default.  **EOR 47 1295 [dkt. 137], 1297 [dkt. 152].**

Even if Med-Venture and Aurora LLC were properly before this Panel, their entitlement to approximately $1.7 million of the Net Proceeds was the product of fraud as alleged in the SAC (not unlike Messrs. Babcock and Noble's prior claim of ownership of Coastal).  **EOR 30, ¶¶** 130–57.  As alleged, neither Med-Venture nor Aurora LLC were consultants, they provided no marketing services and, in fact, provided no services at all.  Both entities were controlled and owned by Messrs. Babcock and Nobles, both marketing agreements were in material respects identical, both purported to provide duplicative services, and both were suspended corporations at the time of the sale, at the time that some of the alleged services were to be provided, at the time they received payments and currently.  As suspended corporations, they were not entitled to payment under the marketing agreements even assuming *arguendo* they had actually performed any services. *See* Cal. Rev. & Tax. Code § 23304.1.  Even if Med-Venture and Aurora LLC were revived, it would still be a question of fact as to whether they were legitimate creditors of Coastal entitled to any of the Net Proceeds or whether their claims for compensation for work not performed, like the prior claims of ownership in Coastal, were a sham.

As to Appellees' second contention, although *Pisculli* was a case interpreting the provisions of Section 727, the court discussed that some of the postpetition transfers of the proceeds had been turned over to the chapter 7 trustee following conversion of the debtor's chapter 13 case to one under chapter 7. *Pisculli*, 426 B.R. at 57.  If the proceeds in *Pisculli* were not property of the estate,

9

the chapter 7 trustee would have no right to seek turnover of the funds, and indeed, the *Pisculli* court specifically found that the proceeds were property of the debtor's estate under Section 541. *Id.* at 62–64. Thus, the holding in *Pisculli* is also applicable to actions under 11 U.S.C. §§ 549 and 542.

The SAC sufficiently pleads that the Net Proceeds are property of the Estate under 11 U.S.C. § 541(a)(1) as the Estate had a direct interest in the Net Proceeds as the sole shareholder of a non-operating entity that liquidated its sole asset.

## C. The SAC Pleads Sufficient Facts that the Proceeds are Property of the Estate Pursuant to an Alter Ego Remedy

Although Appellees argue that under California law a finding that Coastal was Debtor's alter ego would not make the Net Proceeds assets of the Estate, this Panel and many other courts have applied California law and held that "'property of the debtor' includes not only property nominally held by the debtor, but also property held by the debtor's alter ego." *In re Singh*, 2019 WL 1231146, at *6 (B.A.P. 9th Cir. Mar. 14, 2019) (applying California law and collecting cases). "In bankruptcy, an alter ego is a nominal third party that has no substantive existence separate from the debtor, and property purportedly held by that third party is, therefore, the debtor's own property." *Chantel v. Pierce*, 2015 WL 3988985, at *6 (9th Cir. BAP July 1, 2015), *aff'd*, 693 F. App'x 723 (9th Cir. 2017) (citing *Int'l Fin. Servs. Corp. v. Chromas Techs. Can., Inc.,* 356 F.3d 731, 734, 736–737, 740 (7th Cir.2004); *In re Pisculli,* 426 B.R. 52, 61 (Bankr. E.D.N.Y. 2010) (assets of an alter ego of debtor at the time of filing the bankruptcy petition are property of the estate); *see also In re Stout*, 649 F. App'x 621, 623 (9th Cir. 2016) ("While the transfer of assets owned by a corporation normally does not constitute a transfer by a debtor of his or her own property, property owned by a corporation may be considered a debtor's property where the corporation was the debtor's alter ego.").

10

Thus, contrary to Appellees' assertions, under California law, a finding of alter ego would make the Net Proceeds assets of the Estate.

Appellees additionally argue that under California law, a corporation cannot be held liable for the actions of its shareholder. However, as this Panel explained in *Singh*, "[i]n many cases, the alter ego doctrine is used to hold shareholders liable for the debts or conduct of a corporation. But the doctrine can also be employed to determine whether a corporation or its shareholder is the true owner of property." *Singh*, 2019 WL 1231146, at *6. This is what the Trustee seeks to do through the SAC—determine whether Coastal or Debtor was the true owner of the Net Proceeds. The Trustee is not seeking to reverse pierce the corporate veil, but rather to determine who was the true owner of the Net Proceeds, which is a proper use of the alter ego doctrine.

The bankruptcy court did not find that the alter ego allegations in the SAC were deficient, nor have Appellees argued such. At the motion to dismiss stage, these allegations are sufficient to plead that the Net Proceeds were property of the Estate under Section 541(a)(1).

**D.    The SAC Sufficiently Pleads Sufficient Facts to State a Claim for Recission under California Corporations Code § 1001**

Appellees argue that because the Trustee is not seeking to undo the sale of the Wine Estate Property, each transfer of the Net Proceeds should be reviewed separately, and that each individual transfer cannot constitute all or substantially all Coastal's assets and, therefore, falls outside of California Corporations Code § 1001. To the contrary, it cannot be the case that the Wine Estate Property was a singular asset, but the $7,000,000 in Net Proceeds is 7,000,000 assets. Rather, there was but one corpus arising from the Liquidation Event, and any attempt to transfer, dissipate, or use this asset required shareholder consent.

11

It matters little whether Debtor gave the Net Proceeds to one person in one distribution or gave incremental amounts to multiple people in multiple transactions as they were all done postpetition under a single scheme and singular goal of defrauding creditors. Once the Liquidation Event occurred, this divested Debtor, as a director of Coastal, from control over the Net Proceeds, which Net Proceeds now belonged to the Estate as sole shareholder under the Amended Articles and California law. And, because ownership and control of the Net Proceeds belonged to the Estate, bankruptcy court authorization to use such proceeds was required pursuant to 11 U.S.C. § 363(b) because any use was outside the ordinary course as a result of the Liquidation Event.

Interpretation of the statute to focus on the Net Proceeds as the only target of Section 1001, and not the sale of the Wine Estate Property itself in the first instance, is nonsensical. The statute requires shareholder approval to "sell, lease, convey, exchange, transfer, or otherwise dispose of all or substantially all of its assets." Cal. Corp. Code § 1001; *see also Jeppi v Brockman Holding Co.*, 34 Cal. 2d 11, 15-16 (1949) ("The reason for this limitation is that a corporation is organized for the purpose of doing business of some nature, and, if so, its shareholders have the right to insist that the corporation continue for the purpose for which it was organized."). The sale of the Wine Estate Property required use of the stock pursuant to Section 1001 and Section 363(b), and the Estate's consent was not obtained, which consent would have required bankruptcy court approval insofar as the sale had not been consummated at the time the Bankruptcy Case was commenced. Debtor was required to provide notice and a hearing, as the sale of the Wine Estate Property was not in the normal course of operations. *See* 11 U.S.C. §363(b)(1). Thus, any further action with respect to the Net Proceeds of this otherwise unapproved act would be subject to the same proscription.

12

Since Debtor did not have authority to sell the Wine Estate Property in the first instance, Debtor did not have authority to then dissipate the Net Proceeds absent the Estate's consent and bankruptcy court approval. Under both Section 1001 and Section 363, the Trustee has standing to unwind those transactions. *See Bank of New York Mellon v. 251 Gotham LLC*, 604 B.R. 71, 77 (Bankr. S.D. Ala. 2019) (quoting *In re Zeman*, No. 09-52559-C, 2010 WL 3123144, at *2 (Bankr. W.D. Tex. Aug. 6, 2010) ("If a debtor, acting with the powers of a trustee, disposes of property out of the ordinary course of business without prior court approval, then the transaction may be unwound as invalid."); *see also In re DeRosa-Grund*, 544 B.R. 339, 367-68 (Bankr. S.D. Tex. 2016) (transfer of property of estate without court approval was void); *In re Manchester Gas Storage, Inc.*, 309 B.R. 354, 379 (Bankr. N.D. Okla. 2004) (stating in the context of § 363(b) that "[t]ransactions requiring, but lacking, approval may be set aside as void").

The Aurora Defendants further argue that the Trustee's claim for recission is barred by *in pari delicto*. However, *in pari delicto* does not apply to avoidance power claims nor to claims arising from postpetition conduct. *In re Roussos*, 2016 WL 5349717, at *11–12 (Bankr. C.D. Cal. Sept. 22, 2016); *see also In re Delano Partners, LLC*, 2014 WL 4966476, at *4-*5 (E.D. Cal. Sept. 29, 2014); *In re Art & Architecture Books of 21st Century*, 2019 WL 9243053, at *16 (C.D. Cal. Dec. 6, 2019).

For the foregoing reasons, the SAC pleads sufficient facts to state a claim for recission under Section 1001 that is plausible on its face.

## E.    The Claims in the SAC are Not Barred by the Statute of Limitations

Appellees argue that even if the bankruptcy erred in finding that the SAC did not adequately plead that the Net Proceeds were property of the Estate, such err was harmless because the claims in the SAC are time barred. This argument was raised by Appellees in connection with the First Motion to Dismiss and the

bankruptcy court correctly rejected this argument. **EOR 20 509–10**. Although JRG Attorneys misleadingly claims that the bankruptcy court said it was "premature" to make a final determination on the matter, the bankruptcy court found that the under the provisions of the Plan, the claims were not barred by the statute of limitations and that it was premature to determine whether the doctrine of adverse domination applies. *Id.*

When a motion to dismiss is based on the running of the statute of limitations, it can be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled. *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980). In contrast, where the statute of limitations question turns on factual issues that may be disputed, the question is more appropriately addressed at a later stage of the proceeding. *See id.* Here, the SAC adequately pleads that the statute of limitations was tolled under two theories: (i) the provisions of the Plan; and (ii) the doctrine of adverse domination.

### 1. The Provisions of the Plan Tolled the Statute of Limitations

Based upon the express terms of the Plan, the bankruptcy court rejected Appellees' statute of limitations argument. Appellees argue that the Trustee was appointed on November 2, 2017, and he immediately had access to information and documents that gave notice of the alleged postpetition transfers. Appellees additionally contend that the Trustee cannot provide any extraordinary circumstance that justifies a delay of four years in commencing the Adversary Proceeding. The Plan makes clear, however, that the Trustee did not have standing or authority to pursue the claims until September 2020.

The SAC alleges that the Trustee's standing to bring the claims against Appellees arises from the authority vested in him under the Plan. **EOR 30 823**, ¶¶ 19–20. Pursuant to the Plan, the Trustee did not have standing to prosecute any

causes of action until the Effective Date of the Plan, which was not until September 15, 2020. **EOR 6 122:15–26**; *see also* **EOR 6 122**:12–14 ("the Liquidating Trustee will not have authority over such Causes of Action (including the Estate Enhancement Action) on the Confirmation Date, but will only have such authority if and when the Effective Date occurs"). The "Causes of Action" defined in the Plan include "avoidance causes of action under Bankruptcy Code sections 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, or 553, or under related state or federal statutes and common law, and other claims held by the Debtor's estate." **EOR 6 108:6–10**.

During the period between confirmation and the Effective Date, the Trustee was not vested with and had no standing to pursue any of the Estate's causes of action. As repeatedly reinforced in the Plan, the Trustee was conferred standing to pursue causes of action as of the Effective Date, not the confirmation date. **EOR 6 121:12-16.** Recognizing that there would be some time between the confirmation and the effective date of the Plan, the Plan contemplated that these claims would be tolled until the Effective Date, as follows:

> Any and all Causes of Action shall survive entry of the Confirmation Order for the benefit of the Debtor's estate and, on and after the Effective Date, for the benefit of the Liquidating Trust and its beneficiaries.

**EOR 6 123:6–8**. Thus, the Causes of Action, defined in the Plan to include avoidance actions under Sections 542 and 549 were stayed and tolled until such time as the Trustee was vested with standing. *Id.* The Aurora Defendants argue that the Plan does not use the "words 'toll,' 'tolled,' or 'tolling.'" Doc. 11, p. 8. However, the Plan expressly provides that the causes of action "shall survive entry. . . on and after the Effective Date, for the benefit of the Liquidating Trustee and its beneficiaries." *Id.*

15

Moreover, contrary to JRG Attorneys' assertion that the Plan's tolling of the statute of limitations is not enforceable, Section 1123(b) of the Bankruptcy Code authorizes post-confirmation pursuit of a debtor's bankruptcy causes of action. *See* 11 U.S.C. § 1123(b)(3)(B) ("a plan may ... provide for ... the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any ... claim or interest"); *Citicorp Acceptance Co. v. Robison (In re Sweetwater),* 884 F.2d 1323, 1327 (10th Cir. 1989) (representative designated in a confirmed plan of reorganization may assert section 544(b) "as a claim of the estate for purposes of § 1123(b)(3)(B)"); *In re Consolidated Capital Equities Corp.,* 143 B.R. 80, 85 (Bankr. N.D. Tex. 1992) (same); *Duvoisin v. East Tenn. Equity Ltd. (In re Southern Indus. Banking Corp.),* 59 B.R. 638, 642 (Bankr. E.D. Tenn. 1986) ("[The] aim [of section 1123(b)(3)(B)] was to *make possible the formulation and consummation of a plan before completion of the investigation and prosecution of causes of action such as those for previous insider misconduct and mismanagement of the debtor.* Thus, the statute was in furtherance of the purpose of preserving all assets of the estate while facilitating confirmation of a plan.") (emphasis added).

JRG Attorneys additionally argues that a chapter 11 plan cannot toll the statute of limitations "where the parties whose rights are impacted received no notice and no opportunity to object to the limitation of their rights."  Doc. 12, p. 33.  This argument directly contradicts relevant case authority. *See*, *e.g.*, *In re Redf Mktg., LLC*, 536 B.R. 646, 655 (Bankr. W.D.N.C. 2015) (finding that transfer avoidance defendants were not entitled to notice of the bankruptcy proceedings); *In re S. Indus. Banking Corp.*, 66 B.R. 349, 361 (Bankr. E.D. Tenn. 1986) ("Formal notice of bankruptcy proceedings to potential preference defendants has never been customary and perhaps never considered previous to this case. This court is confident that neither Congress nor the Bankruptcy Rules Committee envisioned

formal notice of bankruptcy proceedings to transferees of avoidable transfers or their participation in reorganization proceedings until disgorgement of the avoidable transfer."). Even assuming this Panel accepts JRG Attorneys' notice argument, JRG Attorneys had actual knowledge of Debtor's bankruptcy case because it was representing Debtor, among others, in the Enhancement Action, which was filed prior to confirmation of the Plan. *See* **EOR 30**, ¶¶ 19, 62, 163.

Moreover, Appellees' arguments regarding the Trustee's knowledge (or lack thereof) are a red herring. The Trustee's knowledge is irrelevant under the terms of the confirmed Plan because the Trustee had no standing to prosecute any claim on behalf of the Estate until the Effective Date. Appellees argue that the Trustee should have brought a motion to modify or amend the Plan. However, the argument concedes that under the Plan, as confirmed, the Trustee had no authority to prosecute claims; and Appellees cite no basis for an affirmative duty to bring a motion to modify or amend the confirmed Plan.[3]

The bankruptcy court's interpretation of the provisions of the Plan to the effect that the statute of limitations had not begun to run or was otherwise tolled was correct as a matter of contract interpretation and law. The Trustee timely filed the Complaint less than one year after the Effective Date.

### 2. Alternatively, the Statute of Limitations was Tolled Under the Adverse Domination Doctrine

The Trustee's absence of standing during the period between the confirmation of the Plan and its Effective Date begs the question of who, if anyone, had standing to bring such claims from the date of the alleged postpetition

---

[3] The Aurora Defendants reference a fee application submitted by the Trustee's general counsel for the period April 23, 2018 through September 14, 2020—a document not in the EOR or properly before this Panel. Another red herring, as the fee application period ended one day prior to the Effective Date of the Plan.

transfers to the date in which the Trustee was vested with standing.  The Plan does not vest Debtor or anyone else with the right to bring these claims during that period.  Even assuming Debtor was vested with such rights, he was the very individual accused of the scheme to fraudulently transfer assets of the Estate, and the doctrine of adverse domination would apply.

The SAC sufficiently alleges the elements of adverse domination.  It is a "well-settled principle of [California] law[] that the statute of limitations does not commence to run against unlawful acts and expenditures made by or under the direction of the directors of the corporation while they were in full control of its affairs and of the expenditure of its funds." *San Leandro Canning Co. v. Perillo*, 211 Cal. 482, 487 (1931); *see also City of Oakland v. Carpentier*, 13 Cal. 540, 552 (1859).  The adverse domination tolling ends once the wrongdoers are no longer in control of a corporation and its use of funds.  *San Leandro Canning*, 211 Cal. at 487.  As alleged in the SAC, Debtor and his wife were the only directors of Coastal [**EOR 30 826**, ¶ 38] and without court approval Debtor purported to control Coastal's operations and use of its funds until the Trustee was elected as sole director in September 2020 [*Id.* ¶ 203].  These allegations are sufficient to show that the statute of limitations was tolled by the adverse domination doctrine until September 15, 2020—assuming that the statute of limitations could have started to run before the Effective Date.

Additionally, under the Plan, assets of Debtor's estate, including Coastal's stock, were not transferred to the Liquidating Trust until the Effective Date.  Accordingly, the Trustee had no authority prior to September 15, 2020, to oust Debtor and his wife as directors of Coastal or to take control over Coastal.  The Trustee respectfully submits that the allegations in the Complaint coupled with the plain language of the Plan, make it clear that the statute of limitations had not run at the time the Trustee filed the Complaint.  At a minimum, there are factual

18

questions, which questions are appropriately addressed at a later stage in the proceeding. *Jablon*, 614 F.2d at 682.

## F.    The Other Claims Against JRG Attorneys are Sufficiently Pled

JRG Attorneys argues that the Trustee's other claims against JRG Attorneys are not well plead. JRG Attorneys argues that there can be no action for conversion where the owner authorized the challenged transfer. Doc. 12, p. 35. However, as discussed above, the Estate held a legal and equitable interest in the Net Proceeds, and the Estate did not consent to these transfers.

With respect to the turnover claim, "Bankruptcy Code § 542(a) grants a bankruptcy trustee the power to recover property of the debtor's estate or such property's value." *Shapiro v. Henson*, 739 F.3d 1198, 1199 (9th Cir. 2014). "With this power, the trustee may seek recovery from entities having 'possession, custody, or control' of the property sought, whether the property was in the entity's possession, custody, or control at the time the motion was filed or at any other point during the pendency of the bankruptcy case." *Id.* The SAC sufficiently alleges that the Net Proceeds were property of the Estate at the time the funds were transferred to JRG Attorneys, and that JRG Attorneys has been in possession, custody, or control of the portion of the Net Proceeds transferred to it during the Bankruptcy Case. **EOR 30 860**, ¶ 197.

Finally, the claim for disgorgement under 11 U.S.C. § 330 is proper. Although the bankruptcy dismissed this claim with prejudice, it was not because the claim was not well pled. Rather, the bankruptcy court found that Section 330 did not apply because JRG Attorneys was not paid with property of the Estate. **EOR 38 1147–48**. However, as discussed above, the bankruptcy court was incorrect in finding that the Net Proceeds were not property of the Estate. It is well established that the penalty for failure to be employed as counsel or satisfy the code's requirements is disallowance or disgorgement of fees paid to counsel. *See In*

19

*re Monument Auto Detail*, 226 B.R. 219, 224 (B.A.P. 9th Cir. 1998) ("Court approval of employment of counsel for debtor-in-possession is the *sine qua non* to counsel getting paid. Failure to obtain court approval of a professional in accordance with the Bankruptcy Code and rules precludes payment of fees."); *In re Baker*, 68 B.R. 360, 363-65 (D. Or. 1986) (holding that the debtor's wholly owned corporation became an asset of the bankruptcy estate upon filing of the debtor's chapter 11 petition such that the chapter 11 trustee could not make payments from the corporation to himself and others without the court's approval). As alleged, JRG Attorneys was paid from Estate property without Court approval. Accordingly, the SAC sufficiently pleads facts to state a claim for disgorgement under Section 330.

## III.

## CONCLUSION

The Trustee respectfully requests that this Court enter an order vacating the Judgment and reversing the Orders of the Bankruptcy Court, and grant to the Trustee such other relief as this Court deems just and proper under the circumstances.

Dated: January 19, 2023            BG LAW LLP

By: _____
Jason B. Komorsky
Jessica L. Bagdanov
Jessica S. Wellington
Attorneys for Michael G. Kasolas,
Liquidating Trustee for the Robert
Brower, Sr. Liquidating Trust and
Appellant

## IV.

## CERTIFICATION OF COMPLIANCE

The text in this brief is proportionally spaced.  The typeface is Times New Roman, 14-point.  The word count generated by Word for the portions subject to the restrictions of Rule 8015(a)(7) of the Federal Rules of Bankruptcy Procedure, inclusive of text and footnotes, is 6,495.

Dated:  January 19, 2023                    BG LAW LLP


By: _____
    Jason B. Komorsky
    Jessica L. Bagdanov
    Jessica S. Wellington
    Attorneys for Michael G. Kasolas,
    Liquidating Trustee for the Robert
    Brower, Sr. Liquidating Trust and
    Appellant

**V.**

**Certificate of Service When Not All Case Participants Are CM/ECF Participants**

I hereby certify that on January 19, 2023 I electronically filed the foregoing document with the Clerk of the Court for the Bankruptcy Appellate Panel for the Ninth Circuit by using the CM/ECF system.

I further certify that parties of record to this appeal who either are registered CM/ECF users, or who have registered for electronic notice, or who have consented in writing to electronic service, will be served through the CM/ECF system.

I further certify that some of the parties of record to this appeal have not consented to electronic service. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days, to the following parties:

Heinz Binder
BINDER & MALTER
2775 Park Ave.
Santa Clara, CA 95050-0000

_____
_____

_____
/s/ Jessica S. Studley_____