

FILED

APR 12 2023

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>ROBERT S. BROWER, SR.,<br><div align="center">Debtor.</div> | BAP No. NC-22-1215-FBG<br><br>Bk. No. 5:15-bk-50801-MEH |
| MICHAEL G. KASOLAS, Liquidating Trustee for the Robert Brower, Sr. Liquidating Trust,<br><div align="center">Appellant,</div><br>v.<br>AURORA CAPITAL ADVISORS; RICHARD BABCOCK; JRG ATTORNEYS AT LAW; OLDFIELD CREELY, LLP; ANTHONY NOBLES,<br><div align="center">Appellees.</div> | Adv. No. 5:21-ap-05029-MEH<br><br><br><br><br>**MEMORANDUM**[*] |

Appeal from the United States Bankruptcy Court
for the Northern District of California
M. Elaine Hammond, Bankruptcy Judge, Presiding

Before: FARIS, BRAND, and GAN, Bankruptcy Judges.

### INTRODUCTION

Section 549 of the Bankruptcy Code allows a trustee to avoid a

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

transfer of property of the debtor's bankruptcy estate. Chapter 11[1] debtor-in-possession Robert S. Brower, Sr. caused his wholly-owned corporation to transfer substantial corporate assets postpetition to various individuals and entities without court approval. The liquidation trustee sued to recover the transferred assets, characterizing those corporate assets as property of the shareholder's bankruptcy estate. We agree with the bankruptcy court's determination that, under California law, the corporation's assets were not estate property. We therefore AFFIRM the bankruptcy court's partial dismissal of the liquidation trustee's complaint.

## FACTS

### A.    Prepetition events

Mr. Brower was director, president, and sole shareholder of Coastal Cypress Corporation ("Coastal"). Coastal's main asset was real property (the "Wine Estate") used by another of Mr. Brower's corporations, Chateau Julien, Inc.

Chateau Julien borrowed $4.85 million from MUFG Union Bank, N.A. ("Union Bank"). Mr. Brower personally guaranteed the loan. Chateau Julien defaulted on the loan, and Union Bank obtained a writ of attachment against Mr. Brower.

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

## B.   Mr. Brower's bankruptcy proceedings

Shortly thereafter, Mr. Brower filed a chapter 11 petition. He scheduled his shares in Coastal as personal property. (At the time, he claimed that he owned only 24 percent of Coastal's shares.)

Very soon after Mr. Brower filed his petition, Coastal sold the Wine Estate for over $12 million and received net proceeds exceeding $7 million ("Net Proceeds"). The sale apparently closed by April 2015, but Mr. Brower repeatedly reported to the bankruptcy court that the sale was not final.

Mr. Brower caused Coastal to transfer the Net Proceeds to various entities, allegedly to or for the benefit of Mr. Brower, his corporations, his family, his family's corporations, and other businesses. He allegedly transferred substantial sums to the appellees, including approximately: $1,120,000 to Med-Venture Investments (of which appellee Anthony Nobles was a member and to which appellee Richard Babcock provided legal services); $600,000 to Aurora Capital Advisors ("Aurora") (of which Mr. Nobles and Mr. Babcock are general partners); $200,000 to appellee Oldfield Creely, LLP ("Oldfield Creely"); and $280,000 to appellee JRG Attorneys at Law ("JRG").

Union Bank filed an adversary proceeding against Mr. Brower and others, seeking a determination that Mr. Brower had understated his interests in Coastal and another business.[2] After a trial, the bankruptcy

---

[2] Union Bank also prevailed on a separate adversary proceeding to determine that Mr. Brower's debt to Union Bank was nondischargeable under § 523(a)(2).

3

court held that Mr. Brower was the sole shareholder of Coastal and other corporate entities. The district court affirmed the bankruptcy court's ruling.

Meanwhile, the bankruptcy court confirmed a plan of reorganization proposed by Union Bank. The plan provided for appointment of a liquidating trustee ("Trustee"). The "Liquidating Trust Agreement" specified that the Trustee's duties and powers would accrue in two stages. First, beginning on the "Confirmation Date," the Trustee would market the assets of the estate. Second, on the "Effective Date," the legal claims of the estate would become the property of the liquidating trust and the Trustee would become empowered to pursue claims and close the sales of estate assets. Ultimately, nearly three years passed between the confirmation date (November 6, 2017) and the effective date (September 15, 2020).

Mr. Brower passed away in September 2020.

**C.   The Trustee's adversary complaint**

The Trustee filed an adversary complaint against the appellees, Mr. Brower's estate, and others. He alleged that Mr. Brower had caused Coastal to transfer over $7 million of the Net Proceeds postpetition to other entities or to use the funds to enrich himself. He alleged ten claims for relief: (1) avoidance of postpetition transfers under § 549; (2) avoidance of actual fraudulent transfers under California law; (3) avoidance of constructive fraudulent transfers under California law; (4) recovery of transfers for the benefit of the estate under §§ 550 and 551; (5) turnover of estate property under § 542; (6) accounting of property of the estate under

4

§ 542; (7) breach of fiduciary duty against Mr. Brower's trust; (8) aiding and abetting breach of fiduciary duty against JRG; (9) disgorgement under § 330 against three law firms; and (10) conversion.

Some of the defendants filed motions to dismiss portions of the complaint under Civil Rule 12(b)(6) (made applicable in adversary proceedings by Rule 7012): one by Aurora, Mr. Babcock, Mr. Nobles, and Med-Venture Investments; another by Oldfield Creely; and a third by JRG. All three motions argued that the Net Proceeds were not property of Mr. Brower's estate, which was fatal to the avoidance and turnover claims.

After two hearings, the bankruptcy court granted the motions with leave to amend. The court held that the complaint did not sufficiently allege that the Net Proceeds were property of the bankruptcy estate. It stated that the "estate includes the debtor's ownership interest in Coastal, but the standard rule is that assets of a corporation owned by a debtor are not an asset of the debtor unless the corporate form is pierced or otherwise invaded. Here, the complaint does not allege alter ego or veil-piercing claims." It allowed the Trustee to amend the complaint to allege an alternate basis of relief.[3]

## D. The first amended complaint

The Trustee filed a first amended complaint ("FAC") that asserted the

---

[3] The bankruptcy court held that the Trustee's claims were not time-barred because the Liquidating Trust Agreement provided that the Trustee would only have authority over the estate's causes of action on the effective date and contemplated survival of all causes of action through the effective date.

same ten causes of action. He asserted two theories for avoidance under § 549: that Mr. Brower had full control of Coastal and was entitled to the full Net Proceeds; and that Mr. Brower treated Coastal as his alter ego, so the court must disregard any distinction between the two.

Aurora, Mr. Babcock, Mr. Nobles, and Med-Venture filed a motion to dismiss the FAC. They argued that the Trustee's amendments failed to cure the defects that warranted dismissal of the original complaint.

Oldfield Creely filed a separate motion to dismiss. It argued that, under California law, alter ego concerns only liability and does not mean that an individual's assets are that of a corporation, or vice versa.

The Trustee opposed the two motions to dismiss. He argued that the primary asset of a closely held corporation owned and fully controlled by the debtor is property of the bankruptcy estate.

After a hearing, the bankruptcy court held that the Trustee had not adequately pled that the Net Proceeds were estate property and granted the motions to dismiss as to the first, fourth, fifth, sixth, ninth, and tenth causes of action; it granted leave to amend "solely on the issue of whether the Debtor exceeded shareholder authority." It dismissed the second and third causes of action without leave to amend.

As to whether the transfers involved estate property, the bankruptcy court rejected the Trustee's arguments. First, the court examined state law to determine whether the Net Proceeds ever became property of the bankruptcy estate under § 541. Under California law, a "shareholder

simply has an expectancy in [corporate property and corporate earnings]" and "does not own the corporate property." *Miller v. McColgan*, 17 Cal. 2d 432, 436 (1941). It concluded that, because Coastal (and not Mr. Brower) owned the Wine Estate, the sale proceeds were not proceeds of Mr. Brower's shares and were thus not property of his bankruptcy estate.

Second, the bankruptcy court held that alter ego under California law – as opposed to federal authority cited by the Trustee – only establishes that one entity is liable for the debts of another and does not merge the assets of the two entities. Therefore, the alter ego theory could not establish that Mr. Brower owned Coastal's assets.

Third, the bankruptcy court rejected the Trustee's theory that Mr. Brower had full control over Coastal's assets and was entitled to distribution of the Net Proceeds. The court noted that the Net Proceeds had not been transferred to Mr. Brower and therefore had not become assets of his estate.

Fourth, the court allowed the Trustee to amend the FAC to assert his new position that Mr. Brower had exceeded his shareholder authority under California Corporations Code § 1001(a) when he transferred Coastal's assets without shareholder approval.

E.    **The second amended complaint**

The Trustee filed a second amended complaint ("SAC") and reworked some of his claims: (1) avoidance of postpetition transfers under § 549; (2) rescission under California Corporations Code § 1001;

(3) recovery of avoided transfers under §§ 550 and 551; (4) turnover of estate assets pursuant to § 542; (5) accounting; (6) breach of fiduciary duty against Mr. Brower's trust; (7) breach of fiduciary duty against JRG; (8) disgorgement; and (9) conversion.

For the first time, the Trustee asserted that the sale of the Wine Estate was a "Liquidation Event" pursuant to Coastal's Amended Articles of Incorporation ("Articles") because it was a sale of all or substantially all of Coastal's assets. Article III.B.2(c)(i) of the Articles defines a "Liquidation Event" to include "a sale, lease, exclusive license or other disposition of all or substantially all of the assets, technology or intellectual property of the corporation . . . ." The Trustee alleged that, once a liquidation event occurred, Mr. Brower – as Coastal's sole shareholder – was entitled to mandatory distribution of the Net Proceeds.

Furthermore, California Corporations Code § 1001 mandated shareholder approval of any disposition of the Net Proceeds outside of the regular course of business; Mr. Brower was Coastal's only shareholder, and he was the debtor-in-possession in a chapter 11 case who could not act outside the ordinary course of business without bankruptcy court approval under § 363(b). The Trustee asserted that transactions that did not receive valid shareholder approval are subject to rescission by the shareholder.

The same entities filed motions to dismiss: Oldfield Creely; Aurora, Mr. Babcock, and Mr. Nobles; and JRG. They argued that the Net Proceeds were not property of the bankruptcy estate and that the transfers did not

require bankruptcy court approval.

After a hearing, the bankruptcy court granted the motions and dismissed the claims at issue without leave to amend. It concluded that the Trustee could not plead that the Net Proceeds are property of the bankruptcy estate, which eliminated the first, third, fourth, fifth, and ninth claims for relief.

The court reiterated that Mr. Brower "maintained the Net Proceeds in Coastal's account and controlled the flow of the Net Proceeds. At no point did Brower transfer funds from Coastal to his bankruptcy estate." It said that §§ 541(a)(6) and (7) did not make the Net Proceeds property of the estate, because "[p]roceeds received by a corporation from corporate assets are not proceeds of shareholder interests." Additionally, under California law, shareholders do not own corporate property and only have an expectancy interest in corporate property when the corporation is liquidated (or dividends are issued). It also adopted its discussion in the prior memorandum decision rejecting the Trustee's arguments regarding alter ego and Mr. Brower's position as the sole shareholder.

Similarly, the bankruptcy court rejected the Trustee's new claim that the sale of the Wine Estate was a "Liquidation Event" that automatically vested the Net Assets in Mr. Brower: Coastal still had obligations to pay corporate debts (including federal taxes). Thus, "Debtor's estate only held an expectancy interest in the future value of Coastal, which was subject to Debtor's diminishment until Coastal was actually liquidated."

The bankruptcy court next addressed the second cause of action for violation of California Corporations Code § 1001(a) and failure to seek court approval under § 363(b). The court held that the Trustee failed to offer any authority in support of his position. Moreover, a trustee's avoidance and recovery rights only apply to property of the estate; even if the Wine Estate sale violated California Corporations Code § 1001(a), the Net Proceeds still did not become estate property. It dismissed the second claim with prejudice.

The bankruptcy court also dismissed with prejudice the seventh cause of action for breach of fiduciary duty against JRG and the eighth cause of action for disgorgement against JRG and Oldfield Creely.

The bankruptcy court thus dismissed with prejudice the first, second, third, fourth, fifth, seventh, eighth, and ninth claims as to the movants and issued a Civil Rule 54(b) judgment. The Trustee timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(E). Because the bankruptcy court certified its judgment as final under Civil Rule 54(b), we have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Whether the bankruptcy court erred in granting the motions to dismiss.

## STANDARDS OF REVIEW

We review de novo the bankruptcy court's order granting a motion

10

to dismiss for failure to state a claim under Civil Rule 12(b)(6). *Movsesian v. Victoria Versicherung AG*, 670 F.3d 1067, 1071 (9th Cir. 2012) (en banc). Similarly, whether property is included in a bankruptcy estate is a question of law that we review de novo. *White v. Brown (In re White)*, 389 B.R. 693, 698 (9th Cir. BAP 2008). "De novo review requires that we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014).

We may affirm on any basis reasonably supported by the record. *Black v. Bonnie Springs Family Ltd. P'ship (In re Black)*, 487 B.R. 202, 211 (9th Cir. BAP 2013).

## DISCUSSION

The Trustee essentially raises two arguments on appeal: that the bankruptcy court erred in holding that he failed to allege sufficiently that (1) the Net Proceeds were property of the bankruptcy estate; and (2) the sale of the Wine Estate required shareholder and bankruptcy court approval. We reject both arguments.

## A.    The bankruptcy court may dismiss a complaint for failure to state a claim upon which relief can be granted.

Under Civil Rule 12(b)(6), a court must dismiss a complaint that fails to state a claim upon which relief can be granted. To survive a motion to dismiss, the plaintiff must present cognizable legal theories and sufficient factual allegations to support those theories; in other words, "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

11

*Twombly*, 550 U.S. 544, 570 (2007); *see Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121-22 (9th Cir. 2008). A claim is facially plausible when the plaintiff pleads facts that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555, 570.

In deciding whether the complaint states a claim upon which relief can be granted, the court accepts the allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of L.A.*, 828 F.2d 556, 561 (9th Cir. 1987). But the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Hartman v. Gilead Scis., Inc. (In re Gilead Scis. Sec. Litig.)*, 536 F.3d 1049, 1055 (9th Cir. 2008).

**B.  The bankruptcy court did not err in holding that the Trustee could not plausibly allege that the Net Proceeds were property of the bankruptcy estate.**

Section 549 authorizes a trustee to avoid a postpetition transfer of estate property. The trustee must prove (1) a transfer (2) of estate property (3) that occurred after the commencement of the case and (4) that was not authorized by statute or the court. § 549(a). The question here is whether the transfers of the Net Proceeds involved estate property.

The Trustee raises three arguments: that the sale of the Wine Estate was a "Liquidation Event" that transformed the corporate assets into Mr. Brower's personal assets; that Mr. Brower's total control of Coastal meant that he owned Coastal's assets; and that Coastal was his alter ego. None of these arguments is persuasive.

### 1.   The "Liquidation Event" in the Articles did not transform the Net Proceeds into estate property.

First, the Trustee argues that the Net Proceeds were property of the bankruptcy estate under §§ 541(a)(6) and (7), because a shareholder becomes owner of the corporate property and earnings when the corporation is liquidated. He contends that the sale of the Wine Estate was a "Liquidation Event" under Coastal's Articles, so the bankruptcy estate had "an absolute right to the Net Proceeds . . . when Coastal was liquidated."

While it is undisputed that Mr. Brower's interest in Coastal (i.e., his ownership of 100 percent of the corporation's shares) is property of the estate, we do not agree that, under California law, Coastal's assets (i.e., the Net Proceeds) became Mr. Brower's property following the Wine Estate sale.

"Although the question whether an interest claimed by the debtor is 'property of the estate' is a federal question to be decided by federal law, bankruptcy courts must look to state law to determine whether and to what extent the debtor has any legal or equitable interests in property as of

the commencement of the case." *Fursman v. Ulrich (In re First Prot., Inc.)*, 440 B.R. 821, 828 (9th Cir. BAP 2010) (quoting *McCarthy, Johnson & Miller v. N. Bay Plumbing, Inc. (In re Pettit)*, 217 F.3d 1072, 1078 (9th Cir. 2000)). Thus, we examine California law to determine whether and to what extent Mr. Brower had a legal or equitable interest in Coastal's property. *Abele v. Mod. Fin. Plans Servs., Inc. (In re Cohen)*, 300 F.3d 1097, 1104 (9th Cir. 2002).

A shareholder "does not own the corporate property." *Miller*, 17 Cal. 2d at 436. Rather, it is beyond cavil that

> [a] corporation has a personality distinct from that of its shareholders, and that the latter neither own the corporate property nor the corporate earnings. The shareholder simply has an expectancy in each, and he becomes the owner of a portion of each only when the corporation is liquidated by action of the directors or when a portion of the corporation's earnings is segregated and set aside for dividend payments . . . .

*Id.*; *see also Nelson v. Anderson*, 72 Cal. App. 4th 111, 126 (1999) (stating that "[s]hareholders own neither the property nor the earnings of the corporation. . . . Shareholders own only stock . . ."). In other words, only Mr. Brower's right (if any) to receive funds from Coastal was property of the estate; the funds would become property of the estate only if and when Mr. Brower received them (or if and when funds were set aside to pay dividends to him).

A fundamental flaw in the Trustee's argument is that he conflates liquidation of a corporation's assets with liquidation of the corporation itself. He cites cases referring to the latter, but that means the winding up

14

of the corporation and the distribution of its remaining assets to equity holders. The sale (i.e., the conversion to liquid form) of a corporation's assets is not the same as liquidating the corporation. *See In re Traung's Est.*, 30 Cal. 2d 811, 814 (1947) ("[E]ven the sale of all of the property of a corporation does not work a dissolution or liquidation of it. Liquidation of a corporation is defined as 'the operation of winding up its affairs by realizing its assets, paying its debts and appropriating the amount of profit or loss.'" (cleaned up)).

The Trustee's argument rests on the premise that the sale of the Wine Estate automatically vested in Mr. Brower ownership of the Net Proceeds. According to Article III.B.2(c)(i), a "Liquidation Event" includes "a sale, lease, exclusive license or other disposition of all or substantially all of the assets, technology or intellectual property of the corporation . . . ." Upon the occurrence of a Liquidation Event, the stockholders "shall be entitled to receive" the remaining assets of the company.

This provision did not make Mr. Brower owner of the Net Proceeds upon sale of the Wine Estate. The Articles provide that he "shall be entitled to receive" a distribution of Coastal's assets. This gave him a claim against Coastal for distribution of the assets, not immediate ownership.

Similarly, the California statutes do not automatically transform a corporation's assets into shareholder assets upon liquidation of the corporation's property. California Corporations Code § 2004 provides: "After determining that all the known debts and liabilities of a corporation

15

in the process of winding up have been paid or adequately provided for, the board shall distribute all the remaining corporate assets among the shareholders according to their respective rights and preferences . . . ." As with the Articles, the statute only requires that the corporate board "shall distribute" the assets to shareholders, not that they are automatically owned by the shareholders.

Importantly, this section only mandates distribution of the corporation's assets **after** the debts and liabilities have been "paid or adequately provided for[.]"[4] *See Penasquitos, Inc. v. Super. Ct.*, 53 Cal. 3d 1180, 1191 (1991) (holding that a corporation cannot distribute its assets until it has paid or made provisions for all known debts and obligations). As the bankruptcy court held and the Trustee does not deny, Coastal owed outstanding debts, including federal taxes and obligations to Mr. Brower. Indeed, Coastal used some of the Net Proceeds to pay other debts.

The Trustee argues that the bankruptcy court erred because, even if there were unpaid debts, Mr. Brower nevertheless had an absolute right to some portion of the Net Proceeds.[5] In such an event, however, the

---

[4] "Adequately provided for" can mean, among other things, that "[p]ayment thereof has been assumed or guaranteed in good faith by one or more financially responsible corporations or other persons" or "[t]he amount of the debt or liability has been deposited as provided in Section 2008." Cal. Corp. Code § 2005. The Trustee did not allege that either of these conditions were met.

[5] The Trustee also contends that the amount of proceeds available for distribution was a question of fact that cannot be decided on a motion to dismiss. But the court did not need to determine either the amount of proceeds available for distribution or the legitimacy of the debts. Rather, it was sufficient that the court observed that, based on

shareholders would have a right to sue the corporation and demand distribution, but they would still not be the owner of any of the company's assets. Mr. Brower may have breached his duties as debtor-in-possession by not demanding a distribution from the Net Proceeds, but neither the Articles nor California law immediately or automatically granted him ownership of the Net Proceeds.

### 2. Mr. Brower's 100 percent interest in Coastal did not give him or his estate ownership of Coastal's assets.

Second, the Trustee contends that, because Mr. Brower owned and controlled Coastal, he owned Coastal's assets. As such, the Net Proceeds became property of the estate under § 541(a)(1). We disagree.

Section 541(a) provides that the debtor's estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." There is no question that the stock of Coastal that Mr. Brower owned was property of his bankruptcy estate. But it does not follow that Coastal's assets were property of Mr. Brower's estate, because even the owner of all of a corporation's stock does not own the corporation's assets. *See Dole Food Co. v. Patrickson*, 538 U.S. 468, 474-75 (2003) ("A basic tenet of American corporate law is that the corporation and its shareholders are distinct entities. . . . A corporate parent which owns the shares of a subsidiary does not, for that reason alone, own or have legal title to the assets of the

---

the facts pled in the complaint, Coastal had outstanding debts and obligations following the sale of the Wine Estate; therefore, shareholders had no right to any distribution.

subsidiary[.]"); *Sonora Diamond Corp. v. Super. Ct.*, 83 Cal. App. 4th 523, 538 (2000) ("[A] corporation is regarded as a legal entity, separate and distinct from its stockholders, officers and directors, with separate and distinct liabilities and obligations.").

The same rule applies in the bankruptcy context. *See, e.g.*, *Leslie v. Bartamian (In re Mihranian)*, BAP No. CC-16-1378-KuFTa, 2017 WL 2775043, at *5-6 (9th Cir. BAP June 29, 2017) (affirming the dismissal of a fraudulent transfer claim and holding that fees earned by the debtor's wholly-owned corporation were not the debtor's assets and "[t]o hold otherwise would ignore the legal separateness of [the corporation]"); *W. Valley Med. Partners, LLC v. Shapow (In re Shapow)*, 599 B.R. 51, 71 (Bankr. C.D. Cal. 2019) (citing authority and holding that corporate assets did not belong to the debtor for the purposes of a § 727(a)(4) claim). There is no dispute that Mr. Brower owned 100 percent of Coastal's shares and that those shares therefore became property of Mr. Brower's bankruptcy estate. But because Coastal and Mr. Brower were separate legal entities, Mr. Brower did not own Coastal's assets.

The Trustee cites cases allegedly for the proposition that the assets of a debtor's wholly-owned corporation are assets of the debtor's estate, but none of them is compelling. Many of the cases cited by the Trustee merely stand for the unremarkable proposition that a debtor's interest in a corporation becomes property of the estate. *See Retz v. Samson (In re Retz)*, 606 F.3d 1189 (9th Cir. 2010) (holding that the debtor's six percent interest

in a corporation was property of the estate); *In re Baker*, 68 B.R. 360 (Bankr. D. Or. 1986) (stating, without analysis, that the debtors' wholly-owned corporation became an asset of the estate; it did not consider or hold that the corporation's assets were estate property). These cases do not support the Trustee's position that, if the debtor owns all of the stock of the corporation, the assets of that corporation are property of the estate.

The Trustee largely relies on cases that do not construe California law. The Ninth Circuit has made clear that state law defines property rights for bankruptcy purposes. *Off. Comm. Of Unsecured Creditors v. Hancock Park Cap. II, L.P. (In re Fitness Holdings Int'l, Inc.)*, 714 F.3d 1141, 1147 (9th Cir. 2013) ("[A] court must determine whether the asserted interest in the debtor's assets is a 'right to payment' recognized under state law[.]" (cleaned up)). In so holding, the Ninth Circuit relied on the Supreme Court's decision in *Butner v. United States*, 440 U.S. 48, 54 (1979), which stated that "Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law." In California, the assets of a corporation, even a corporation with only one shareholder, are not the property of the shareholder. A bankruptcy court in this circuit may not disregard this principle of state law.

We thus reject the Trustee's reliance on cases that are at odds with California law. *See, e.g., DZ Bank AG Deutsche Zentral-Genossenschaft Bank v. Meyer*, 869 F.3d 839 (9th Cir. 2017) (a Ninth Circuit case decided under the Washington Uniform Fraudulent Transfer Act); *T.S. Haulers, Inc. v. Pisculli*

*(In re Pisculli)*, 2009 WL 700059, at *3 (Bankr. E.D.N.Y. Mar. 4, 2009), *aff'd*, 426 B.R. 52 (E.D.N.Y. 2010), *aff'd*, 408 F. App'x 477 (2d Cir. 2011) (an unpublished decision from the bankruptcy court for the Eastern District of New York holding that "the Debtor had a direct interest in the Proceeds" after he liquidated the corporation's assets, paid its debts, and the corporation ceased operation).

Other cases cited by the Trustee are distinguishable. For example, *Bank of America, N.A. v. Torkan (In re Yona)*, Case No. 2:16-bk-17549-ER, 2017 WL 2491493 (Bankr. C.D. Cal. June 8, 2017), does not support the Trustee's argument. Although the bankruptcy court held that the debtors' estate included the debtors' shares in two wholly-owned corporations, it never said that the assets of the two corporations were property of the debtors' estate. Rather, the court held that, because the creditor's liens affected **the debtors'** property, as well as the corporations' property, the trustee had exclusive authority to attack those liens.

### 3. The alter ego doctrine under California law cannot bring the Net Proceeds into the estate.

Third, the Trustee argues that Mr. Brower and Coastal were alter egos of each other, such that the bankruptcy court should treat Coastal's assets as Mr. Brower's assets. We disagree.

We look to state law for the definition and legal consequences of the alter ego doctrine. Under California law, the concern of the alter ego doctrine is not "whether the corporate entity should be disregarded for all

purposes or whether its very purpose was to defraud the innocent party,"
but rather "whether in the particular case presented, justice and equity can
best be accomplished and fraud and unfairness defeated by disregarding
the distinct entity of the corporate form." *Communist Party v. 522 Valencia,
Inc.*, 35 Cal. App. 4th 980, 993 (1995); *see Sonora Diamond Corp.*, 83 Cal. App.
4th at 538 ("A corporate identity may be disregarded—the 'corporate veil'
pierced—where an abuse of the corporate privilege justifies holding the
equitable ownership of a corporation liable for the actions of the
corporation.").

California courts have made clear that the alter ego doctrine is meant
to impose liability despite the corporate veil of separation, not to wholly
disregard the corporation's existence. The California Supreme Court stated:

> It is not that a corporation will be held liable for the acts of
> another corporation because there is really only one
> corporation. **Rather, it is that under certain circumstances a
> hole will be drilled in the wall of limited liability erected by
> the corporate form; for all purposes other than that for which
> the hole was drilled, the wall still stands**. When it is claimed
> that a parent corporation should be liable because it is the alter
> ego of its subsidiary, equity commands that the corporate wall
> be breached. Yet the wall remains: the parent is liable through
> the acts of the subsidiary, but as a separate entity.

*Mesler v. Bragg Mgmt. Co.*, 39 Cal. 3d 290, 301 (1985) (emphasis added).

We have previously explained the limitations of the alter ego doctrine
under California law.

**[A]lter ego is not a claim or cause of action that, when**

> **successful, treats the owner and the company as the same
> legal entity for all purposes**. Rather, it is a procedural device
> that permits courts to disregard the legal separateness between
> a business entity and an owner for **limited purposes** – such as
> where the corporate form is being used by the individuals to
> escape personal liability, sanction a fraud, or promote injustice.
> Typically, the entity's separate identity is disregarded so that
> the corporation will be liable for acts of the stockholders or the
> stockholders liable for acts done in the name of the corporation.

*Schaefers v. Blizzard Energy, Inc. (In re Schaefers)*, 623 B.R. 777, 784-85 (9th
Cir. BAP 2020) (emphases added) (citations and quotation marks omitted);
*see also In re Mihranian*, 2017 WL 2775043, at *6 (noting, under California
law, that the plaintiff could not outside reverse pierce the corporate veil
and "claim the assets of [the corporation] as if they belonged to [debtor]
individually and his bankruptcy estate").

In this case, the bankruptcy court did not err when it held that the
alter ego doctrine could not make Mr. Brower the owner of Coastal's assets.
It properly cited *Mesler* and other California cases for the proposition that
alter ego would only serve to drill a hole in the corporate wall to transfer
liability from the corporation to its shareholder, not to merge Coastal's
assets with Mr. Brower's.[6]

---

[6] This case is distinguishable from our holding in *Singh v. Singh (In re Singh)*, BAP
No. CC-17-1353-FLS, 2019 WL 1231146 (9th Cir. BAP Mar. 14, 2019), where we stated
that an alter ego determination can be "employed to determine whether a corporation
or its shareholder is the true owner of property." *Id.* at *6. In that case, we considered
§ 727(a)(2), which provides that the court must deny the debtor's discharge if (among
other things) the debtor has "concealed" property of the debtor or the estate. Stashing

Because the Trustee cannot plausibly plead that the Net Proceeds were property of the bankruptcy estate, the court did not err in dismissing the first, third, fourth, fifth, eighth, and ninth causes of action in the SAC.

## C. The bankruptcy court did not err in holding that the Trustee could not plead a plausible claim under California Corporations Code § 1001(a).

The Trustee next challenges the bankruptcy court's dismissal of his second cause of action for violation of California Corporations Code § 1001(a). He argues that, because the sale of the Wine Estate was impermissible without court approval under § 363(b), he can void the subsequent transfers. He is wrong.

Section 1001(a) of the California Corporations Code provides:

**A corporation may sell**, lease, convey, exchange, transfer, or

---

money or property in a corporation can amount to "concealment" of "property of the debtor" under § 727(a). These considerations do not apply to avoidance claims under § 549.

We are also not convinced by the Trustee's reliance on *Kismet Acquisition, LLC v. Icenhower (In re Icenhower)*, 757 F.3d 1044, 1050 (9th Cir. 2014). That case holds only that, if the bankruptcy court substantively consolidates the shareholder's estate with the corporation, transfers of corporate property are treated as transfers of estate property. The bankruptcy court never substantively consolidated Coastal with Mr. Brower's bankruptcy estate.

The Trustee also cites *Stratton v. Vita Bella Group Homes, Inc. (In re Bellardita)*, Case No. 05-60471-A-7, 2008 WL 4296554, at *11 (Bankr. E.D. Cal. Sept. 19, 2008), for its statement that "the alter ego doctrine brings the assets of a debtor's alter ego into the bankruptcy estate." *Bellardita* cannot be reconciled with the California Supreme Court's clear statement in *Mesler* that alter ego does not demolish the wall of separation between the corporation and its shareholder, but rather drills holes in the wall through which only liabilities and not assets can pass.

otherwise dispose of **all or substantially all of its assets when** the principal terms are approved by the board, and, **unless the transaction is in the usual and regular course of its business, approved by the outstanding shares** . . . , either before or after approval by the board and before or after the transaction.

(Emphases added.) A violation renders the impermissible transaction voidable, not void. *See Solorza v. Park Water Co.*, 86 Cal. App. 2d 653, 659 (1948).

The Trustee's argument has two steps. The first step is that, because the Wine Estate was Coastal's sole asset, the sale comprised "all or substantially all" of the corporation's assets. He argues that the sale was not in the "usual and regular course of its business," so shareholder approval was required.

This step of the argument fails for two reasons. First, section 1001(a) applies to sales or other dispositions of substantially all of a corporation's assets. By its terms, it does not apply to the disbursement of the proceeds of such a sale in a piecemeal fashion over a period of years. In this case, the Trustee does not seek to set aside the sale, but rather wants to recover the proceeds, and the statute does not apply to those transactions.[7] Second, while it is true that shareholder approval was required for the sale of the

---

[7] We reject the Trustee's contention that shareholder approval was needed because the various transfers concerned "one corpus" and constituted disposition of "all or substantially all" of Coastal's assets. He cites no authority suggesting that multiple, smaller transactions that were but a part of "substantially all" of the corporation's assets required shareholder approval.

Wine Estate, there is no doubt that the sole shareholder (Mr. Brower) not only approved the transaction, but also orchestrated it.

The second step of the Trustee's argument also fails. He argues that Mr. Brower had to obtain the bankruptcy court's approval under § 363(b) in order to validly grant his approval (as shareholder) of the Coastal sale. Because Mr. Brower did not obtain the requisite court approval, says the Trustee, the proceeds are recoverable under § 549, which (in summary) permits a trustee to avoid and recover unauthorized post-petition transfers of "property of the estate."

Even assuming that the Wine Estate sale violated California Corporations Code § 1001(a), the Trustee fails to explain how the violation regarding the sale would have permitted a shareholder to undo the subsequent transfers of sale proceeds.

## CONCLUSION

The bankruptcy court did not err in granting the motions to dismiss. We AFFIRM.[8]

---

[8] Because we hold that the bankruptcy court did not err in dismissing the subject claims for the reasons stated above, we do not need to address the appellees' argument that certain claims were barred by the statute of limitations.